UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.                                                        No. 02-4046

RICKIE MUSIC,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CR-00-86)

Argued: September 26, 2002

Decided: October 24, 2002

Before NIEMEYER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Lisa Blue Boggs, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

After pleading guilty to one count of possession of child pornography, *see* 18 U.S.C. § 2252(a)(5)(B) & (b)(2), Rickie Music was sentenced to 60 months of imprisonment and 3 years of supervised release. The district court, over Music's objection, included the following condition in Music's supervised release terms: "defendant shall participate in an evaluation and a mental health program with emphasis on sex offender treatment at the discretion of the probation officer. Treatment may include physiological testing such as the polygraph and penile plethysmograph, and the use of prescribed medications."* Music appeals this condition, arguing that the district court erred in subjecting him to possible polygraph and plethysmograph testing because this testing does not satisfy the requirements for imposing conditions on supervised release laid out in 18 U.S.C. § 3583(d). Specifically, Music argues that this circuit's general rule against admitting evidence from such testing implies that it is insufficiently reliable to serve as a condition of supervised release. The fact that polygraph and penile plethysmograph testing is generally inadmissible for evidentiary purposes does not mean that the tests are unreliable for other purposes, such as treatment. We therefore affirm Music's sentence.

---

*A penile plethysmograph

is a test designed to measure the client's patterns of sexual arousal, and is administered as follows. The client places a penile circumference gage around his penis. A wire from the gage leads to an electronic machine which records the circumference of the client's penis on a line graph, while the client is presented with a series of audio and visual material. The client wears a hospital gown during the test.

*Walrath v. United States*, 830 F. Supp. 444, 446 n.1 (N.D. Ill. 1993).

### I.

When imposing a sentence of supervised release, a district court must include certain conditions listed in 18 U.S.C. § 3583(d). In addition, the court may include "any other condition it considers to be appropriate," *id.*, as long as that condition "is reasonably related" to certain statutory factors referred to in § 3583(d)(1). These factors are: "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), providing adequate deterrence, § 3553(a)(2)(B), protecting the public from further crimes, § 3553(a)(2)(C), and providing the defendant with training, medical care, or treatment, § 3553(a)(2)(D). Furthermore, conditions must "involve[ ] no greater deprivation of liberty than is reasonably necessary" for achieving the specified goals, and they must be consistent with Sentencing Commission policy statements on supervised release. 18 U.S.C. § 3583(d)(2) & (3).

Because district courts have broad latitude in the choice of conditions on supervised release, we review the imposition of these conditions for abuse of discretion. *See United States v. Crandon*, 173 F.3d 122, 127 (3rd Cir. 1999); *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997); *see also United States v. Wesley*, 81 F.3d 482, 484 (4th Cir. 1996).

Music argues that because polygraph and plethysmograph evidence is generally inadmissible, it must be inherently unreliable. He reasons that inherently unreliable tests cannot be reasonably related to the goals of supervised release and that assigning the tests as a condition of supervised release is thus an abuse of discretion. He is correct that our circuit takes a dim view of polygraph evidence. It is inadmissible in nearly every circumstance at trial. *See, e.g.*, *United States v. Porter*, 821 F.2d 968, 974 (4th Cir. 1987); *United States v. Brevard*, 739 F.2d 180, 182 (4th Cir. 1984). *But see United States v. A.S. Council Oil Co.*, 947 F.2d 1128, 1134-35 (4th Cir. 1991) (polygraph evidence may be admitted to challenge credibility of expert who "must have necessarily discounted" polygraph results). Our decisions holding polygraph evidence to be inadmissible do not contain any detailed analysis of whether the test is reliable. *See, e.g.*, *Brevard*, 739 F.2d at 182 (stating simply that "[e]vidence that the accused or a witness has taken a polygraph test is inadmissible."). We do not seem to have

considered, for example, whether there have been any improvements in the technology. Rather, our decisions reflect an acceptance of a general (and longstanding) rule against admissibility of polygraph evidence. *See generally* 1 McCormick on Evidence (John W. Strong ed., 5th ed. 1999) § 206.

Our court has given a bit more consideration to penile plethysmograph evidence. In *United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir. 1995), we held that a district court did not abuse its discretion by refusing to admit plethysmograph evidence offered by a criminal defendant. Unlike what we have done in the polygraph area, we did not announce in *Powers* a general rule that plethysmograph evidence is inadmissible. Rather, we noted that the government had provided unrebutted evidence that the test lacks "accepted standards in the scientific community" and that the test is prone to producing false negatives. *Powers*, 59 F.3d at 1471. We then concluded that the government had established that the test is insufficiently reliable to meet the "scientific validity" prong of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Although it was not relevant to the issue of admissibility, we noted that the government conceded that the plethysmograph test is "useful for treatment of sex offenders." *Powers*, 59 F.3d at 1471. *See also Pool v. McKune*, 987 P.2d 1073, 1079 (Kan. 1999).

II.

A.

Music has not offered any evidence about the reliability or unreliability of either the polygraph or the penile plethysmograph test. He simply argues that because the tests are inadmissible for evidentiary purposes, it follows that they are not sufficiently reliable to be used as a condition of supervised release. We do not agree. The level of reliability required for a test to reasonably relate to the goals of supervised release is not as high as the level of reliability required for admissibility into evidence. *Cf., e.g.*, *Rudy-Glanzer ex rel Doe v. Glanzer*, 232 F.3d 1258, 1265-66 (9th Cir. 2000). In other words, a test's unfitness as evidence says nothing about its fitness for therapy, monitoring, or investigation. We have recognized that police officers may consider polygraph results in assessing whether there is probable

cause to make an arrest. *Gomez v. Atkins*, 296 F.3d 253, 264 n.8 (4th Cir. July 11, 2002). Likewise, in *Powers* we noted in dictum that there is support for using penile plethysmography in the treatment and monitoring of sex offenders. *Powers*, 59 F.3d at 1471 & n.13. Because the inadmissibility of the polygraph and plethysmograph tests for evidentiary purposes does not necessarily render them unreliable for treatment purposes, and because Music did not offer any evidence that the tests were unreliable for use in treatment, the district court did not abuse its discretion in allowing the use of the tests as a condition of supervised release.

## B.

Music argues in the alternative that even if polygraph and penile plethysmograph testing are reasonably related to the goals of supervised release, they are unacceptable conditions because the results of the testing may be used to revoke his release. The sentence, however, makes the testing available as part of treatment, not as a program of monitoring to ensure compliance with other conditions. If at some point in the future Music is subjected to these tests and their results are relied upon to revoke his supervised release, he will be free to object at that time. For now, Music's alternative objection is not well taken.

Music's sentence is affirmed.

*AFFIRMED*