[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-10782

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 14, 2003
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-00132-CR-ORL-22

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KARL P. ZINN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 14, 2003)

Before TJOFLAT and BLACK, Circuit Judges, and GOLDBERG[*], Judge.

BLACK, Circuit Judge:

_____

[*]Honorable Richard W. Goldberg, Judge, United States Court of
International Trade, sitting by designation.

Appellant Karl P. Zinn pled guilty to possessing child pornography and was sentenced to imprisonment to be followed by a period of supervised release. The supervised release included a number of special conditions, four of which Appellant challenges on appeal. Finding no reversible error, we affirm Appellant's sentence in its entirety.

## I. BACKGROUND

On May 13, 2002, Appellant pled guilty[1] to a one-count indictment charging him with possessing materials containing images of child pornography that had been mailed, shipped or transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B). According to the presentence investigation report (PSR), to which Appellant raised no objections and the district court adopted as its findings of fact, on March 15, 2001, Appellant contacted an undercover United States Customs Service web site and expressed an interest in purchasing two pornographic videotapes depicting girls between the ages of 6 and 13 years old. He subsequently received an order form, which he completed and mailed to the web site operators along with a check for $85. On April 3, 2001, two child pornographic video tapes arrived at Appellant's home as part of a controlled delivery. Hours later, Customs agents executed a search warrant of the home and

_____

[1]Appellant pled guilty without the benefit of a written plea agreement.

recovered compact discs and computer diskettes containing in excess of 4,000 images of child pornography. During his plea hearing, Appellant admitted to the district court that he had "received child pornography over the internet."

The PSR noted Appellant admitted being suicidal and had voluntarily begun mental health counseling shortly after his arrest. His attorney also told the district court during sentencing that Appellant suffered from "profound psychological problems" and requested that Appellant be placed in a federal medical facility where he could receive appropriate treatment. The district court sentenced Appellant to a term of 33 months' imprisonment, with a recommendation that he be committed to a medical facility. The court also sentenced Appellant to a term of three years' supervised release, which included the following special conditions:

> [1] You shall participate as directed in a program of mental health treatment including a sexual offender treatment program approved by the probation officer. You shall abide by the rules, requirements and conditions of the treatment program, including submitting to polygraph testing, at your own expense, to aid in the treatment and supervision process. The results of the polygraph examination may not be used as evidence in court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions.

> Further, you shall be required to contribute to the costs of services for such treatment in an amount determined reasonable by the probation officer based upon ability to pay or availability of third-party payment

3

and in conformance with the Probation Office's sliding scale for mental health treatment services. [2] You shall register with the State Sexual Offender Registration Agency [in] any State where you reside, visit, or are employed, carry on a vocation or are a student as directed by your probation officer. The probation officer will provide State officials with all information required under Florida Sexual Predators and Sexual Offender Notification and Registration Statutes and [may] direct you to report to these agencies personally for required additional processing such as photographic, fingerprinting and DNA collection.

[3] You shall have no direct contact with minors under the age of 18 without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate including schools, day care centers, theme parks, playgrounds, et cetera . . . . [4] You shall not possess or use a computer with access to any on-line service at any location, including employment, without written approval from the probation officer. This includes access through any Internet service provider, bulletin board system, or any public or private computer network system . . . .[2]

After the district court imposed sentence, Appellant's counsel objected to the special conditions of supervised release:

And I would also like to state for the record my objections to the supervised release conditions that this Court has imposed. I think, well, I object in particular to the polygraph examination. I think that's not a

---

[2]In addition to these four special conditions of supervised release, Appellant was ordered not to possess materials depicting children in the nude or in sexually explicit positions, and to undergo periodic searches of his computer systems, person, and residence. He does not challenge these other conditions on appeal. The district court also ordered Appellant to perform community service and forfeit certain assets, which he has not challenged. In addition, although the applicable Sentencing Guidelines called for a fine between $6,000 and $60,000, both parties stipulated that Appellant was unable to pay a fine.

proper condition of his supervised release. I think that, I strongly object to that condition Your Honor.

I also object to the restrictions as to the internet access. I think there's some First Amendment concerns there. I also object, I will say for the record I object to many of the restrictions this Court has put on his supervised release. I think it's unduly harsh. I think it also violates his Constitutional rights. The First and Eighth Amendments and I think that, I understand the Court's concern in these type of cases, but I think, I think the Court has been unduly harsh with Mr. Zinn. I think the supervised release constitutes an excessive punishment.

The district court overruled the objections. Appellant then filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This Court ordinarily reviews the district court's sentence of supervised release for abuse of discretion. *See United States v. Bull*, 214 F.3d 1275, 1278 (11th Cir. 2000). Where a defendant fails to clearly state the grounds for an objection in the district court, however, he waives the objection on appeal and we are limited to reviewing for plain error. *United States v. Delgado*, 903 F.2d 1495, 1504 (11th Cir. 1990); *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990), *overruled on other grounds*, *United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993); *see also United States v. Riggs*, 967 F.2d 561, 565 (11th Cir. 1992) (noting that a defendant who fails to articulate a "clear objection" to a supervised

5

release condition waives the objection on appeal). To find reversible error under the plain error standard, we must conclude that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights. *United States v. Richardson*, 304 F.3d 1061, 1064 (11th Cir. 2002).

Regarding the degree of clarity needed to preserve an objection for appeal, we have stated that:

> Whenever a litigant has a meritorious proposition of law which he is seriously pressing upon the attention of the trial court, he should raise that point in such clear and simple language that the trial court may not misunderstand it, and if his point is so obscurely hinted at that the trial court quite excusably may fail to grasp it, it will avail naught to disturb the judgment on appeal.

*Riggs*, 967 F.2d at 564 (quoting *United States v. Reyes-Vasquez*, 905 F.2d 1497, 1500 (11th Cir. 1990)). Thus, if a defendant fails to *clearly* articulate a specific objection during sentencing, the objection is waived on appeal and we confine our review to plain error.

## III. DISCUSSION

On appeal, Appellant challenges the special conditions of supervised release: (1) requiring him to register as a sexual offender; (2) prohibiting him from entering places where children frequent; (3) requiring him to submit to polygraph testing; and (4) prohibiting him from using the Internet. As to the first

two, we conclude the district court did not err and affirm without further discussion.[3] We write, however, to address the remaining two special conditions.

A. *Polygraph Testing*

Appellant asserts the special condition requiring him to submit to polygraph testing: (1) is not reasonably related to the history and facts of this case, (2) improperly delegates judicial authority to the probation officer, (3) violates his Fifth Amendment privilege against self-incrimination, and (4) improperly requires him to pay for polygraph testing despite his inability to do so.

We will address each of these arguments seriatim. Before turning to the merits, however, we first consider the Government's contention that Appellant's challenge to the polygraph testing is generally not ripe for our review because supervised release has not yet begun.

1. *Ripeness.*

Federal courts are constrained under Article III to deciding only actual cases or controversies. U.S. CONST. art. III, § 2. As part of the case or controversy requirement, a party must come into immediate danger of suffering injury before a court may consider his claim. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999). Ripeness "prevent[s] the courts, through the avoidance of premature

---

[3]*See* 11th Cir. R. 36-1.

7

adjudication, from entangling themselves in abstract disagreements." *Id.* (quoting

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 1515 (1967)).

An injury need not have already occurred, however, for a controversy to be ripe.

Rather, we have found claims on appeal ripe where they assert an imminent threat

of future injury. *Ecee Inc. v. Fed. Energy Regulatory Comm'n*, 611 F.2d 554, 557

n.7 (5th Cir. 1980).[4]

Contrary to the Government's assertions, Appellant's challenge to the

polygraph exam is neither premature nor speculative. The district court's

sentence, of which the conditions of supervised release are a part, is a final

judgment immediately appealable to this Court. *See* 18 U.S.C. § 3742(a).

Moreover, though he is presently incarcerated, it seems apparent that Appellant

will be subject to the challenged condition upon his release from prison.[5] *See*

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[5]The Government suggests the probation officer might select a course of mental health treatment that does not include polygraph testing. Although this possibility might lend support to the Government's ripeness argument, we find no basis for it in the record. The district court ordered that Appellant "*shall* abide by the rules, requirements and conditions of the treatment program, including submitting to polygraph testing" (emphasis added). While there is room for interpretation, we construe this language as mandating polygraph testing as a component of mental health treatment.

*United States v. Davis*, 242 F.3d 49, 51 (1st Cir. 2001) (finding challenge to condition of supervised release was "not hypothetical" where supervised release was to begin immediately following prison sentence). By determining a challenge to the polygraph testing requirement to be generally ripe, however, we do not imply that all specific challenges to the *implementation* of this condition are necessarily ripe. In fact, as explained below, the reverse is true in this case.

2. *Polygraph Testing Generally*.

Turning to Appellant's challenge to the polygraph testing, we first consider his assertion on appeal that polygraph testing in general is not reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a). Counsel's statement during sentencing that polygraph testing is "not a proper condition" of supervised release, though perhaps imprecise, adequately conveyed the nature of his objection so as to preserve it for appeal. Therefore, we review the objection for abuse of discretion. *See Bull*, 214 F.3d at 1278.

18 U.S.C. § 3553 directs the sentencing court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

> (2) the need for the sentence imposed-

> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

9

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The court should "impose a sentence sufficient, but not greater than necessary" to achieve the statutory purposes. *Id.*

The United States Code further states that the district court may impose any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in § 3553(a). 18 U.S.C. § 3583(d). Similarly, the federal Sentencing Guidelines permit the sentencing court to impose any conditions of supervised release that are "reasonably related" to the § 3553(a) factors, so long as the conditions "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth [in § 3553(a)] and are consistent with any pertinent policy statements issued by the Sentencing Commission." U.S.S.G. § 5D1.3(b).

We have observed it is not necessary for a special condition to be supported by each factor enumerated in § 3553(a). Rather, each is an independent consideration to be weighed. *Bull*, 214 F.3d at 1278. Moreover, while the

Sentencing Guidelines recognize that a condition of supervised release should not unduly restrict a defendant's liberty, a condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights. *See Owens v. Kelley*, 681 F.2d 1362, 1366 (11th Cir. 1982).

Appellant admitted having severe psychological problems, including an affinity for child pornography. At the time of his arrest, he was in possession of thousands of pornographic images depicting children as young as six years old. The district court found it necessary to impose a sentence near the high end of the Guidelines for Appellant's own safety and rehabilitation "and the safety of the public." In light of Appellant's crime and personal history, we agree with the district court that he poses a danger to himself and others and is likely to require further rehabilitation upon his release from prison. Under the circumstances, we conclude polygraph testing to ensure compliance with probationary terms is both reasonably related to Appellant's offense and personal history, and when reasonably applied will not unduly burden his rights. Therefore, it was not an abuse of discretion for the district court to generally require Appellant's submission to polygraph testing. *See also United States v. Music*, 49 Fed. Appx. 393 (4th Cir. 2002) (holding district court did not abuse its discretion in ordering

11

polygraph testing on supervised release for defendant convicted of possessing child pornography).

3. *Implementation of Polygraph Testing.*

Appellant's remaining arguments[6] regarding the condition requiring submission to polygraph testing can be fairly characterized as challenging the potential abuses in its implementation. Contrary to Appellant's assertions, he has not preserved these arguments for appeal and we are therefore limited to reviewing them for plain error.[7]

---

[6]We refer in this section mainly to Appellant's arguments that the polygraph testing violates his Fifth Amendment rights and unduly delegates authority to the probation officer. The remaining argument Appellant raised in support of his challenge to the polygraph testing was that by ordering Appellant to contribute to the costs of polygraph testing, the district court contravened its earlier finding that Appellant was unable to pay a fine. This argument is unavailing. Although the district court directed that Appellant pay for polygraph testing, it also stated during sentencing that the costs of mental health treatment, of which the polygraph testing was a component, would only be assessed to Appellant based on his ability to pay or the availability of third-party payment. We have previously observed that "[i]n determining the terms of a sentence, it is the intent of the sentencing judge which controls and that intent is to be determined by reference to the entire record." *Bull*, 214 F.3d at 1279 (citation omitted). As we did when confronted with similar circumstances in *Bull*, we conclude the only reasonable construction of the overall sentence in this case is that Appellant must pay for polygraph testing based on his ability to pay at the time the testing occurs. This instruction is not inconsistent with the district court's finding Appellant unable to pay a fine at the time of sentence, and did not constitute reversible error.

[7]Appellant's counsel's argument to the district court that polygraph testing was "not a proper condition" of supervised release was inadequate to properly

Appellant first asserts polygraph testing would violate the Fifth Amendment based on the principle that it is unconstitutional for the Government to compel him to "answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 322 (1973). Seizing on this principle, he argues that if he is asked a potentially incriminating question during a polygraph exam, he will be unconstitutionally forced to choose between answering or refusing to answer at the risk of having his supervised release adversely modified.[8]

---

apprize the court of the very focused objections he now raises for the first time on appeal, including that the condition violates his Fifth Amendment rights and improperly delegates authority to the probation officer.  As we have already indicated, the district court is not expected to read minds or independently conceive of every possible argument a party might raise in support of an objection.  It is a defendant's–or his counsel's–burden to articulate the specific nature of his objection to a condition of supervised release so that the district court may reasonably have an opportunity to consider it.  Similarly, we are unpersuaded that counsel's vague reference to Appellant's "Constitutional rights" was sufficient to preserve his objections for appeal.

[8]The district court expressly ordered as part of its sentence that "[t]he results of the polygraph examination may not be used as evidence in court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions."  The court's order is unclear as to what type of "modification" might be a permissible response to a failed polygraph exam.  We will assume without deciding that the potential consequences in refusing to answer would be sufficiently adverse to create a genuine Fifth Amendment dilemma.

13

The Supreme Court has stated that a state may generally require a probationer to appear and discuss matters that affect his probationary status without violating the Fifth Amendment. *Minnesota v. Murphy*, 465 U.S. 420, 435, 104 S. Ct. 1136, 1146 (1984); *see also United States v. Robinson*, 893 F.2d 1244, 1245 (11th Cir. 1990) (affirming revocation of convicted currency smuggler's probation where probationer violated condition of release by refusing to answer questions regarding sources of income). The Court in *Murphy* admitted some exceptions to the general rule, such as where a state forces a probationer to answer incriminating questions over a claim of privilege:

> The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Murphy*, 465 U.S. at 435, 104 S. Ct. at 1146. The Court went on to note, however, that "questions put to a probationer [that] were relevant to his probationary status

14

and posed no realistic threat of incrimination in a separate criminal proceeding" would not violate the Fifth Amendment. *Id.* at 435 n.7, 104 S. Ct. at 1146 n.7.[9]

It is undisputed that at this juncture there has been no potentially incriminating question or invocation of the privilege, much less any government compulsion to testify over a valid claim of privilege. Such an eventuality is within the realm of possibility, but hypothetical possibilities do not present a cognizable Fifth Amendment claim. As the First Circuit recently observed in rejecting a similar challenge, it would be pure speculation to assume such facts now simply because they might conceivably come to exist at some future time. *See Davis*, 242 F.3d at 52 ("Should the court revoke Davis's supervised release as a penalty for his legitimate exercise of his Fifth Amendment privilege, he remains free to challenge that action at the time it occurs. That eventuality, however, has not yet occurred (and may never occur)."). If and when Appellant is forced to testify over his valid claim of privilege, he may raise a Fifth Amendment challenge. In the

---

[9]The Court held in *Murphy* that a Fifth Amendment privilege was not self-executing where a probationer is required to answer questions affecting his probation. In other words, even if the probationer gave incriminating testimony, such testimony would not be barred in a subsequent proceeding unless the probationer actually asserted a claim of privilege. *See Murphy*, 465 U.S. at 440, 104 S. Ct. at 1149. In this case, not only has Appellant not yet asserted a claim of privilege, he has not given any incriminating testimony or even been requested to give such testimony.

15

meantime, we can only decide whether requiring polygraph testing as a condition of supervised release generally violates the Fifth Amendment so as to amount to plain error. We hold it does not.

For the same reasons, Appellant cannot demonstrate plain error in the district court's delegation of authority to the probation officer for overseeing Appellant's mental health treatment, including administration of polygraph exams. The district court's sentence was consistent with the Sentencing Guidelines, which expressly permitted the court to impose "a condition [of supervised release] requiring that the defendant participate in a mental health program *approved by the United States Probation Office*." U.S.S.G. § 5B1.3(d)(5), p.s. (emphasis added). Furthermore, we have recognized the vital role probation officers fulfill in effectuating the district court's sentence. *See United States v. Bernardine*, 237 F.3d 1279, 1283 (11th Cir. 2001) ("For purposes of efficiency, district courts must be able to rely as extensively as possible on the support services of probation officers.") (internal quotations omitted) (citation omitted). Thus, the delegation of authority to the probation officer generally does not constitute plain error. And, while we might again conceive of a scenario where a probation officer abuses or oversteps his lawful authority, there is no reason to suspect at this time that such will be the case here.

16

Accordingly, the district court did not err in requiring Appellant's submission to polygraph testing as a condition of supervised release.

B. *Restriction on Internet Usage*

Appellant asserts the restriction on Internet usage is improper under 18 U.S.C. § 3583(d) because it is not reasonably related to legitimate sentencing considerations and overly burdens his First Amendment rights. Specifically, he argues the district court could have satisfied the statutory sentencing goals in relation to his offense without entirely foreclosing all Internet use. We review the special condition restricting Internet use for abuse of discretion. *See Bull*, 214 F.3d at 1278.

Whether a district court may prohibit a convicted child pornography offender from using the Internet while on supervised release is an issue of first impression in this circuit. The Fifth Circuit has upheld a complete ban on a convicted sex-offender's Internet use while on supervised release. *See United States v. Paul*, 274 F.3d 155, 169-70 (5th Cir. 2001). Additionally, the Tenth Circuit has held a general prohibition against Internet use on supervised release is not error where the offender is allowed to use the Internet with his probation officer's prior permission. *See United States v. Walser*, 275 F.3d 981, 988 (10th

17

Cir. 2001).[10] These courts have noted the strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders. *See, e.g., Paul*, 274 F.3d at 169 ("The record reveals that Paul has in the past used the Internet to encourage exploitation of children by seeking out fellow 'boy lovers' and providing them with advice on how to find and obtain access to 'young friends.' Restricting his access to this communication medium clearly serves the dual statutory goals of protecting the public and preventing future criminal activity.").

We consider the reasoning in these cases persuasive and conclude there was no abuse of discretion in the district court's limited restriction on Appellant's Internet usage. We realize the Internet has become an important resource for information, communication, commerce, and other legitimate uses, all of which may be potentially limited to Appellant as a result of our decision. Nevertheless, the particular facts of this case highlight the concomitant dangers of the Internet

_____

[10]*Walser* clarified an earlier decision of the Tenth Circuit, *United States v. White*, 244 F.3d 1199 (10th Cir. 2001), where the court held that a complete ban on Internet usage with no exceptions was improper under 18 U.S.C. § 3553(a). We are cognizant that *White* was decided under an abuse of discretion standard while in *Walser* the court was limited to reviewing for plain error. Nevertheless, the restriction at issue in this case is virtually identical to *Walser*'s in that in allows Appellant to use the Internet with his probation officer's permission, and we find *Walser*'s reasoning persuasive.

and the need to protect both the public and sex offenders themselves from its potential abuses.[11] We are also satisfied that the restriction in this case is not overly broad in that Appellant may still use the Internet for valid purposes by obtaining his probation officer's prior permission. As the Tenth Circuit observed in *Walser*, this relatively narrowly-tailored condition "readily accomplishes the goal of restricting use of the Internet and more delicately balances the protection of the public with the goals of sentencing." *Walser*, 275 F.3d at 988.

We acknowledge that two other circuits have embraced a holding opposite from the one we adopt today. *See United States v. Freeman*, No. 01-3475, 2003 WL 57329 (3d Cir. Jan. 6, 2003); *United States v. Sofsky*, 287 F.3d 122 (2d Cir. 2002). In *Sofsky*, the Second Circuit held a restriction on computer and Internet use was invalid even where there was an exception if the offender received his probation officer's approval. *Sofsky*, 287 F.3d at 126.[12] In *Freeman*, the Third

---

[11]We reiterate that at the time he was arrested for the instant offense, Appellant was in possession of over 4,000 images of child pornography stored on computer diskettes and compact disks. Appellant's counsel admitted during oral argument that there is a "reasonable assumption" these images came from the Internet. Moreover, it is undisputed that Appellant used the Internet to facilitate the purchase of pornographic videotapes, ultimately leading to his arrest and conviction in this case.

[12]The Second Circuit in *Sofsky* appeared to rely on its earlier decision in *United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001). In *Peterson*, the court rejected a prohibition on computer and Internet usage where the appellant had

Circuit relied on *Sofsky* in reaching the same conclusion. *Freeman*, No. 01-3475, 2003 WL 57329.[13]  Although we appreciate these courts' concerns that restrictions on Internet usage may effect some deprivation of liberty, we agree with those courts holding that a limited restriction on a sex offender's Internet use is a necessary and reasonable condition of supervised release.

## IV. CONCLUSION

The district court did not err in ordering Appellant to submit to polygraph examinations as part of his mental health treatment on supervised release.  This condition is reasonably related to his offense and history, satisfies the statutory sentencing goals set forth in 18 U.S.C. § 3553(a), and does not unduly infringe on Appellant's liberties.  Moreover, although the challenge to the polygraph exam is

---

been convicted of larceny and the Internet restriction was actually related to a prior unrelated sex offense.  Under those circumstances, the court held the restriction was neither reasonably related to the conviction nor reasonably necessary to achieving the statutory sentencing objectives.  *See id.* at 82-83.  Of course, that was neither the case in *Sofsky* nor here, where the restrictions bear a strong tie to the offenses that precipitated the sentences being challenged on appeal.

[13]*Freeman* distinguished an earlier Third Circuit decision, *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999), where the court had upheld a restriction on Internet use.  In *Crandon*, the offender had actually contacted minors over the Internet.  In *Freeman*, the offender had used the Internet to obtain child pornography, but had not directly contacted minors.  According to the Third Circuit, only the former circumstance justified a limited restriction on Internet use. *See Freeman*, No. 01-3475, 2003 WL 57329.  We disagree.

generally ripe for our review, certain of Appellant's arguments against polygraph testing lack merit because they depend on future contingency and speculation. If those contingencies come to fruition, Appellant may challenge the condition at the appropriate time. Finally, we hold the district court did not abuse its discretion by imposing a limited restriction on Appellant's Internet use during the period of supervised release.

AFFIRMED.