[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14–12594
Non-Argument Calendar
_____

D.C. Docket No. 5:92–cr–00082–CAR–CHW–8

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN BOYD,
a.k.a. Mee Tee,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 1, 2015)

Before TJOFLAT, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Calvin Maurice Boyd ("Defendant"), proceeding *pro se*, appeals the denial of his 18 U.S.C. § 3583(e)(1) motion for early termination of supervised release. Defendant argues that the district court erred by failing to give "equitable" consideration to the excess time he spent in prison and by neglecting to consult his probation officer, thereby failing to take into account his conduct and progress while serving his term of supervised release. After review of the record and the parties' briefs, we affirm.

## I.    BACKGROUND

After a jury trial, Defendant was convicted on three counts:  (1) conspiracy to distribute cocaine and cocaine base; (2) conspiracy to violate the Hobbs Act, through a series of robberies and threats of physical violence; and (3) conspiracy to use firearms during a drug-trafficking crime. The presentence report in this case sets out the following facts.[1] Upon his release from state custody in November 1990, Defendant became involved in a violent drug distribution organization. To finance their operation and obtain drugs, organization members would rob other drug dealers, "shot house" operators, and gambling establishments—often while dressed as police officers. On several occasions, organization members shot or

---

[1] At sentencing, Defendant's primary objection to the presentence report focused on the latter's calculation of drug quantity. He also objected to any consideration by the district court of the two counts on which he was acquitted, which counts charged Defendant with possession of a firearm during a drug trafficking crime or a crime of violence on July 21, 1991 and November 21, 1991, respectively, in violation of 18 U.S.C. § 924(c). At sentencing, the district court indicated that it would not consider any conduct for which Defendant was acquitted.

2

otherwise injured their victims, and in December 1991, they killed a drug dealer from whom they had just taken "crack cocaine and cash."

Having joined the conspiracy late, Defendant's known involvement in the organization's drug trade was limited to three deliveries of cocaine base ("crack cocaine"), the total amount of which the district court found to be between 50 and 150 grams.

The presentence report further concluded that Defendant not only delivered drugs for the organization, but he had also involved himself in three violent incidents on its behalf. First, on July 21, 1991, he participated in the robbery of a "high stakes gambling house[,]" during which he was armed with a shotgun. Notably, one of the victims of the robbery was instructed to kneel on the floor, where he was shot in the arm and side with a shotgun. Second, on November 21, 1991, Defendant and a number of co-conspirators "fired shotguns and pistols" into the residence of an individual who owed them $2,400. While the gunfire did not injure anyone, it narrowly missed the debtor's wife and children.

But it should be noted that Defendant was acquitted of the § 924(c) counts (Counts 11 and 14), which charged him with the substantive offense of using and carrying a firearm during a drug trafficking crime and during a crime of violence offense, as charged in Counts 1 and 2, respectively. Count 11 presumably references the July 21 armed robbery and Count 14 presumably references the

3

November 21 shooting as those dates are listed as the dates the offenses were committed. Nevertheless, he was convicted of Counts 1 and 2, which charged him, respectively, with conspiracy to distribute drugs and conspiracy to violate the Hobbs Act through a series of robberies and violent threats. Further, of the overt acts listed in Count 2, Defendant was listed in only one: the November 21 incident where he and co-defendant Clowers were alleged to have shot at Jesse Moseley.

The presentence report also indicated that Defendant was present for the planning of a December 1991 robbery in which the victim was killed, and that he possibly even participated in the crime. The latter incident signaled the beginning of the end for the drug distribution organization. Within two weeks, the organization kidnapped, shot, and killed one of its own members, after learning that this member intended to inform police about the organization's crimes. This event precipitated the flight to New York of some members of the organization, and the arrests of others. Then, in 1992, a grand jury returned an indictment against various members of the drug distribution organization, including Defendant.

In sentencing Defendant, the district court determined his Sentencing Guidelines' range to be 360 months to life,[2] and sentenced him to the low-end of

---

[2] In calculating the Guidelines' range for Defendant's Count 1 conviction, the district court began with a base offense level of 32, pursuant to U.S.S.G. §§ 2D1.1(a)(3) and (c)(6), which apply to offenses involving the unlawful manufacturing, importing, exporting, or

4

the Guidelines' range:  360 months in prison, followed by a five-year term of supervised release.  We affirmed Defendant's conviction and sentence on appeal. *United States v. Boyd*, 131 F.3d 951, 952, 956 (11th Cir. 1997), *cert. denied* 525 U.S. 892 (1998).

In February 2008, Defendant moved the district court to reduce his sentence in light of Amendment 706 to the Sentencing Guidelines, which lowered the offense level for specified thresholds of crack cocaine.  The court granted Defendant's motion, lowering his total offense level to 35 and imposing a sentence at the low-end of the Guidelines' range of 292 months' imprisonment.  Then, in October 2011, after a second, similar amendment to the Sentencing Guidelines— Amendment 750—Defendant again moved the district court to modify his sentence.  Once again, the court granted Defendant's motion, reducing his offense level for the drug trafficking count of conviction.  The court's grant of Defendant's second motion resulted in the lowering of the base offense level for his Count 1

---

trafficking of 50 to 150 grams of cocaine base, or attempts or conspiracies to engage in such offenses.  Because Defendant possessed firearms during the conspiracy, the court then added a two-level enhancement pursuant to §§ 1B1.3 and 2D1.1(b)(1), taking the adjusted offense level to 34.

At the time, this Count 1 drug trafficking conspiracy count of conviction gave rise to Defendant's highest adjusted offense level.  *See* U.S.S.G. § 3D1.4.  Then, to account for Defendant's multiple offenses, the court added three levels pursuant to § 3D1.4, arriving at a total offense level of 37.  Because Defendant had 13 criminal history points and a criminal history category of VI, the above calculation yielded a sentencing range of 360 months to life. U.S.S.G. § 5A.

drug conspiracy conviction to 28.  Two levels were then added, pursuant to the dangerous weapon enhancement, § 2D1.1(b)(1), to arrive at an adjusted offense level of 30.  However, with this latest reduction, the crack cocaine count of conviction no longer gave rise to Defendant's highest adjusted offense level. Rather, at 31, the adjusted offense level for Defendant's Hobbs Act conspiracy conviction achieved that distinction.  Consequently, the court added three levels to this latter adjusted offense level to account for Defendant's multiple offenses, pursuant to § 3D1.4.  Because Defendant had 13 criminal history points and a criminal history category of VI, his Guidelines' range became 262 to 327 months' imprisonment.  U.S.S.G. § 5A.  The district court imposed a 262-month sentence. Notably, the term of Defendant's supervised release did not change with either modification of his sentence.

After serving 228 months of this 262-month sentence, Defendant was released on January 24, 2012,[3] at which point he began serving his five-year term of supervised release.  Nearly two-and-a-half years into that term, Defendant requested that the district court terminate early his supervised release, pursuant to 18 U.S.C. § 3583(e)(1).  In support of his request, Defendant argued that (1) given

---

[3] The Government suspects that Defendant was released after serving only 228 months of his 262-month sentence because of "good time credits earned . . . in prison."  From a rough calculation of the allowable reduction of 54 days a year that good time credit would achieve, the Government's hypothesis seems likely.  *See* 18 U.S.C. § 3624(b)(1) (allowing up to 54 days a year credit on a person's sentence based on satisfactory behavior).

6

the reductions triggered by Amendments 706 and 750, he had spent five extra years in prison; (2) he has fulfilled the conditions of his supervised release; (3) he has held steady employment since his release from prison; (4) he is pursuing a degree at a technical college; and (5) he is not a risk to public safety.

The district court denied Defendant's motion in a summary order issued May 28, 2014.  Defendant moved for reconsideration, which the court granted "for the limited purpose of clarifying [its] previous order."  Specifically, the district court responded that it had denied Defendant's motion for early termination of supervised release because of "particular concern[] about the violent nature of the crimes for which Defendant was convicted and the overarching need to protect the public from further crimes by Defendant."  This appeal followed.[4]

## II.    ANALYSIS

We review a district court's revocation of supervised release, pursuant to 18 U.S.C. § 3583(e)(3), for an abuse of discretion.  *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010).  In addition, we ordinarily review the imposition

---

[4]  Actually, Defendant filed his motion for reconsideration and notice of appeal on the same day.  Ordinarily, "the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal."  *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) and *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001)).  But where, as here, a party timely files a motion for reconsideration before filing a notice of appeal, the latter is tolled until the district court rules on the former.  *United States v. Glover*, 686 F.3d 1203, 1205–06 (11th Cir. 2012); *see* Fed. R. App. P. 4(b)(3).  Thus, the court below possessed jurisdiction to rule on the merits of Defendant's motion for reconsideration.

of a special condition of supervised release for abuse of discretion. *United States v. Zinn*, 321 F.3d 1084, 1087-88 (11th Cir. 2003). For that reason, we will assume that review of the denial of a motion for early termination of supervised release should likewise be subject to an abuse of discretion standard.[5]

In challenging the denial of his motion for early termination, Defendant argues that the district court erred (1) by failing to give equitable consideration to the excess time he spent in prison and (2) by neglecting to consult Defendant's probation officer, thereby failing to take into account Defendant's conduct and progress while serving his term of supervised release. We address each of Defendant's arguments in turn.

## A.    Equitable Consideration of Excess Prison Time

Defendant's first argument, that the district court erred by failing to give equitable consideration to any excess time he spent in prison, is premised on *United States v. Johnson*, 529 U.S. 53 (2000). There, the Supreme Court considered whether a defendant's excess imprisonment should be credited to his supervised release term, thereby reducing its length. *Id.* at 54. Reciting the language of 18 U.S.C. § 3624(e), the Court noted that, with limited, inapplicable exceptions, a term of supervised release does not "commence until an individual is

---

[5] While unpublished, and therefore non-precedential, decisions of this Court have applied this standard to rulings on motions to modify terms of supervised release, we have found no published (precedential) cases on this issue. But we can discern no good reason why an abuse of discretion standard would not be applicable here.

'released from imprisonment.'" *Id.* at 57–59.  The Court further emphasized that imprisonment and supervised release serve separate and distinct ends.  *Id.* at 59–60.  Consequently, the Court held that a term of supervised release is not required to be shortened by excess time an individual spends in prison.  *Johnson*, 529 U.S. at 54, 58, 60.

That said, though, the Supreme Court acknowledged that "equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term."  *Id.* at 60.  Thus, while incarceration in excess of the appropriate sentence does not require a court to shorten a term of supervised release, a district court can certainly take that fact into account when deciding whether to terminate early the defendant's supervised release.  *Id.*

Here, Defendant asserts that he was in prison five-and-a-half years longer than he should have been.  This is so because, in Defendant's view, Amendment 750 directed that his sentence should have been between 140 and 175 months, rather than the 262-month sentence he ultimately received.  Even though Defendant actually served only 228 months, he notes that this period of time also exceeds the amended Guidelines' range that he says should have applied.  Accordingly, Defendant argues that the district court should have taken this excess imprisonment into account when ruling on his motion for early termination of supervised release, and that the court erred by not doing so.

9

Contrary to Defendant's assertion, however, the district court did not err by refusing to give dispositive effect to Defendant's allegedly excessive incarceration. First, and importantly, Defendant did not spend any excess time in prison, albeit he persists in claiming that he did. *See infra* at 12–13. Contrary to his contention, application of Amendment 750 to his case in 2011 did not mean that Defendant's sentencing range was to be between 140 and 175 months.[6] The November 2011 resentencing did lower the adjusted offense level for Defendant's Count 1 drug conspiracy conviction to 30. However, this adjustment meant that the offense level for Defendant's Hobbs Act conspiracy conviction, which was 31, now became the highest offense level for a count of conviction. *See* discussion *supra* at 6. Consequently, when the district court calculated Defendant's new Guidelines' range, it did so based upon this latter offense level of 31. *See* U.S.S.G. § 3D1.4. Given Defendant's criminal history category of VI, the resulting Guidelines' range for Defendant's Hobbs Act conspiracy conviction was 262 to 327 months. U.S.S.G. § 5A. The district court then sentenced Defendant to the low-end of this Guidelines' range, 262 months, of which he served 228 months. In short, Defendant served no excess time in prison.

---

[6] Leaving aside the fact that, with the second reduction, the Hobbs Act conspiracy conviction became the determiner of the base offense level, *see infra*, Defendant's calculation of a Guidelines' range dictated by his drug conspiracy conviction is still incorrect. With a reduced offense level of 28, enhanced by two levels to level 30, and adding three more levels for Defendant's additional counts of conviction, Defendant's total offense level would have been a 33. With Defendant's criminal history, his resulting range would have been 235–293 months, not 140–175 months.

10

Second, while *Johnson* permits a district court to consider excess imprisonment when ruling on a motion to terminate early an individual's supervised release, it does not require the court to end supervision early, based just on that fact. *Johnson*, 529 U.S. at 60 ("The statutory structure provides a means to address [equitable considerations] . . . the court <u>may</u> terminate an individual's supervised release obligations . . . 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'") (internal citation omitted) (emphasis added); *Reynolds v. Thomas*, 603 F.3d 1144, 1148 (9th Cir. 2010) ("A court <u>could</u> consider this alleged period of over-incarceration under 18 U.S.C. § 3583(e) as a factor weighing in favor of reducing the term of supervised release.") (emphasis added), *abrogated on other grounds by Setser v. United States*, 566 U.S. __, 132 S. Ct. 1463 (2012). Indeed, consistent with the structure of 18 U.S.C. § 3583(e), a district court's consideration of excess prison time is discretionary. *See Rhodes v. Judiscak*, 676 F.3d 931, 933–35 (10th Cir. 2012) and *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) ("[A] district court may exercise its discretion to modify an individual's term of supervised release, taking into account that an individual has been 'incarcerated beyond the proper expiration of his prison term.'").

What's more, there is no indication here that when ruling on his motion for early termination of supervised release, the district court failed to take into

11

consideration Defendant's claim that he had spent excess time in prison. Defendant raised that claim in both his initial motion to terminate supervision and in his motion for reconsideration, and the court's order granting in part the latter motion stated that it "considered all the relevant factors and determined that early termination was inappropriate in this case." Notably, the district court had previously rejected, on at least two other occasions, Defendant's very same argument that Amendment 750 dictated that his sentence must fall within the Guidelines' range of 140 to 175 months.

And finally, although excess imprisonment is an "equitable consideration[] of great weight" under *Johnson*, it does not automatically override other factors the district court must consider. Incarceration and supervised release serve different purposes: imprisonment is punitive, whereas supervised release aims to "assist convicted felons in their transitions to community life." *Johnson*, 529 U.S. at 55, 59. On this latter point, Congress acknowledged that a successful transition to community life depends upon a number of factors, and it left it to the district court to use its discretion in balancing those factors. 18 U.S.C. §§ 3553(a), 3583(e)(1); *see Zinn*, 321 F.3d at 1089 ("[E]ach [§ 3553(a) factor] is an independent consideration to be weighed.") and *United States v. Pregent*, 190 F.3d 279, 282–83 (4th Cir. 1999) (discussing, before issuance of *Johnson*, the factors a court considers when contemplating early termination of supervised release). To require

12

early termination of release because of excess time served in prison would undermine this statutory framework.

Thus, the district court did not abuse its discretion in denying Defendant's motion for early termination based on the latter's allegation that he had served more prison time than the Guidelines' range called for.

## B.    Failure to Consider § 3553(a) Factors

Defendant's second argument on appeal is that the district court did not "fulfill its obligations under 18 U.S.C. § 3553(a)[.]"  As discussed below, he supports that argument with four related contentions.  We are not persuaded by Defendant's contentions.

Section 3583(e) allows for early termination of supervision.  It provides that a district court may, after considering certain enumerated provisions of 18 U.S.C. § 3553(a),

> terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, <u>if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice</u>[.]

18 U.S.C. § 3583(e)(1) (emphasis added).  The § 3553(a) factors that the district court must consider are:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence

13

imposed to protect the public from further crimes of the defendant; (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentence and sentencing range established for the applicable category of offense committed, as set forth in the Sentencing Guidelines; (6) pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.  18 U.S.C. §§ 3583(e), 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7).  As a general matter, in weighing the above considerations, the court need not "'articulate the applicability of each factor, as long as the record demonstrates that the pertinent factors were taken into account[.]'" *United States v. Douglas*, 576 F.3d 1216, 1219 (11th Cir. 2009) (quoting *United States v. Williams*, 557 F.3d 1254, 1256 (11th Cir. 2009)).

Defendant argues that the district court's denial of his motion constituted an abuse of discretion, and non-compliance with § 3553(a), because:  (1) the court "failed to consider any of [Defendant's] post-release conduct"; (2) neither the Government nor Defendant's probation officer opposed the motion; (3) Defendant's probation officer "stated repeatedly [] that[,] as f[a]r as he is concerned[, Defendant] has fulfilled all the obligations of supervised release and

14

[that] he did not oppose [Defendant's] supervised release being terminated, and [] would state the same to the district court if consulted"; and (4) no factual basis exists from which to conclude that continued supervised release is required to assuage concerns about the violent nature of Defendant's offenses or to protect the public from future crimes by him.

First, we disagree that the district court failed to consider the § 3553(a) factors, or more particularly the factor that Defendant urges the court should have most considered:  Defendant's post-release conduct.  While it is true that the district court's initial order denying Defendant's initial motion for early termination of supervised release failed to state that it had considered the § 3553(a) factors when ruling on the motion, its order granting in part Defendant's motion for reconsideration indicates that the court had considered these factors.  *See Douglas*, 576 F.3d at 1219 (a district court need not articulate the applicability of each § 3553(a) factor as long as the record demonstrates that the pertinent factors were taken into account.)

Indeed, that order was issued in response to Defendant's motion for reconsideration, which specifically argued that the court had not considered § 3553(a) factors or Defendant's post-release conduct.  Specifically, the district court acknowledged this allegation, noting "Although not explicitly stated, the Court did rely on the § 3553(a) factors in its Order denying Defendant's [initial

15

motion] … [and] the Court considered all the relevant factors [when it] determined that early termination was inappropriate in this case." The district court then went on to identify the primary reason for its denial of early termination of supervision: that is, its "particular[] concern[] about the violent nature of the crimes for which Defendant was convicted and the overarching need to protect the public from further crimes by Defendant." In so clarifying, the court explicitly cited 18 U.S.C. §§ 3553(a)(1) and (a)(2)(C) in support.

As to Defendant's argument that the district court should have allowed early termination because neither the Government nor Defendant's probation officer opposed the motion, we can identify no authority—nor does Defendant cite any—that requires a court to grant an unopposed motion for early termination of supervised release. Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's.

As to Defendant's related argument that the district court must not have consulted with the probation officer before making his decision, and that such consultation was required, Defendant cites no authority that mandates a court to consult a defendant's probation officer when reviewing a motion for early

16

termination of supervised release.  Moreover, Defendant's reliance on the likely positive recommendation of his officer seems greatly overstated.  Specifically, Defendant avers only that, after the initial denial of his motion by the court, the probation officer indicated that "if he was asked," he would advise the court that Defendant "had complied with all conditions of supervised release."  Inasmuch as many, if not most, offenders presumably complete the full term of their release having fully complied with all their conditions, the officer's statement hardly suggested an enthusiastic recommendation that supervision be terminated.  Further, in his own motion, Defendant had noted the factors that should guide probation officers in determining whether to recommend early termination.  One of those factors was "no history of violence" and "no identifiable risk to public safety based on the Risk Prediction Index."  Consideration of those factors suggests that the probation officer should not have, and actually did not, recommend early termination.

Finally, Defendant argues that no factual basis exists from which to conclude that continued supervision is necessary given concerns about the violent nature of Defendant's offenses or to protect the public from future criminal acts by him.  We disagree that there is no basis for continued concern.  Not only was Defendant actively associated with an extremely blood-thirsty band of criminals—and was convicted of conspiracy to commit Hobbs Act violations—his presentence

17

report also details a very troubling past for which he was assigned a criminal history category of VI, the highest criminal history category in the Sentencing Guidelines.[7]  Moreover, Defendant's criminal history shows that he had previously committed three offenses while on parole, and had his probation revoked on another occasion for a technical violation.  Thus, an adequate basis exists in the record to support the district court's concern over the violent nature of Defendant's offenses and its conclusion that completion by Defendant of his full supervised release term was necessary to protect the public.

That said, nothing in our opinion should detract from Defendant's compliant behavior during his release.  He is to be congratulated for maintaining steady employment and pursuing an education since his release from prison.  Indeed, Defendant notes that he has done so well on release, he is no longer even required to report to his probation officer.  In other words, it appears that Defendant is operating under a non-reporting term of supervision.  If accurate, what this means in practical terms is that the only potential ramification posed by continuing supervised release of Defendant is the possibility of revocation, and perhaps a return to prison, should he violate the law during the remainder of his term.  Unless Defendant intends to break the law again, this incentive to continue his good

---

[7]  Of note, Defendant's Hobbs Act conspiracy conviction includes seven violent "shadow" or "pseudo" counts for sentencing purposes; his Count 3 conviction pertains to the possession and use of firearms "in relation to drug trafficking crimes and crimes of violence" and outlines seven overt acts of such conduct.

behavior should not pose an unreasonable burden and, in fact, it is arguably a helpful nudge to encourage the Defendant to continue being a law-abiding citizen.

In short, we conclude that the district court did not abuse its discretion in deciding against an early termination of Defendant's supervised release.

## III.    CONCLUSION

For the above reasons, the district court's order denying Defendant's motion for early termination of supervised release is hereby **AFFIRMED**.