[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16690
Non-Argument Calendar

_____

D.C. Docket No. 8:14-cr-00514-CEH-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AHMED FAROUN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 20, 2017)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Ahmed Faroun appeals his 41-month total sentences for conspiracy to possess with intent to distribute a mixture containing a detectable amount of XLR-11 and AB-Fubinaca, two schedule I controlled substances, as well as THJ-2201, a

schedule I controlled substance analogue, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), 846; two counts of possession with intent to distribute THJ-2201, in violation of 21 U.S.C. §§ 802(32), 841(a)(1) & (b)(1)(C); possession with intent to distribute XLR-11, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C); and possession with intent to distribute AB-Fubinaca, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). On appeal, Faroun argues: (1) that the district court abused its discretion by determining that 1 gram of XLR-11, AB-Fubinaca, or THJ-2201 equals 167 grams of marijuana for the purpose of calculating the drug quantity attributable to him; and (2) for the first time on appeal, that the government failed to present any evidence relating to AB Fubinaca and THJ-2201, since the expert testimony presented at sentencing only related to XLR-11. After careful review, we affirm.

When reviewing the district court's findings with respect to guideline issues, we consider legal issues de novo, factual findings for clear error, and the district court's application of the Guidelines to the facts with due deference, which is akin to clear error review. United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010). In order to be clearly erroneous, the conclusion of the district court must leave us with a "definite and firm conviction that a mistake has been committed." Id. (quotation omitted). However, a factual finding cannot be clearly erroneous

2

when the factfinder is choosing between two permissible views of the evidence. United States v. Saingerard, 621 F.3d 1341, 1343 (11th Cir. 2010).

We review the reliability of an expert opinion for abuse of discretion. United States v. Abreu, 406 F.3d 1304, 1305-06 (11th Cir. 2005). The district court's decision on the competency of, and the weight to be accorded to, the testimony of an expert is a highly discretionary one. United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999).

When a defendant fails to clearly state the grounds for an objection in the district court, we review for plain error. United States v. Zinn, 321 F.3d 1084, 1087 (11th Cir. 2003). For plain error to be established, there must be an error that has not been intentionally relinquished or abandoned. United States v. Olano, 507 U.S. 725, 732-33 (1993). Second, the error must be plain -- that is to say, clear or obvious. Id. at 734. The error must be so clearly established and obvious that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it. United States v. Hesser, 800 F.3d 1310, 1325 (11th Cir. 2015). An error is not plain where the explicit language of a statute or rule does not resolve an issue and there is no precedent from the Supreme Court or our Court directly resolving it. United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003). Third, the error must have affected the defendant's substantial rights, which in the ordinary case means he or she must show a

reasonable probability that, but for the error, the outcome of the proceeding would have been different. Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016). Once these three conditions have been met, we may exercise our discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Olano, 507 U.S. at 736.

In the case of a controlled substance or controlled substance analogue that is not specifically listed in the Sentencing Guidelines, the base offense level is determined using the marijuana equivalency of the most closely related controlled substance referenced in the Guidelines. U.S.S.G. § 2D1.1, comment. (n.6). In determining the most closely related controlled substance, a court should consider:

> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
>
> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
> (C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

Id. Relevant here, AB-Fubinaca and XLR-11, synthetic cannabinoids, and THJ-2201, a synthetic cannabinoid analogue, are controlled substances or controlled substance analogues that are not specifically listed in the Sentencing Guidelines.

4

First, we are unpersuaded by Faroun's claim that the district court clearly erred in determining that a 1:167 ratio applied when calculating the drug quantity for 1,400 grams of XLR-11. As the record reveals, there was conflicting expert testimony presented about whether XLR-11 was more similar to THC or marijuana. There was testimony from Dr. Jordan Trecki, a Drug Enforcement Administration ("DEA") pharmacologist, who applied the three-pronged analysis for unlisted controlled substances provided in the commentary to U.S.S.G. § 2D1.1, and opined that XLR-11 is more similar to THC. However, testimony from Dr. Anthony DeCaprio, a board-certified toxicologist, indicated that it was uncertain whether XLR-11 was more similar to THC or marijuana, but he was able to opine that the effects of XLR-11 were more similar to marijuana than THC.

On this record, it was well within the district court's discretion to rely on Dr. Trecki's testimony over that of Dr. DeCaprio. See Chastain, 198 F.3d at 1348. Indeed, we owe deference to the district court's reliance on and agreement with Dr. Trecki's opinion in applying the three-pronged analysis for unlisted controlled substances to XLR-11's specific factual effects. See Rothenberg, 610 F.3d at 624. Because the district court chose between two permissible views of the evidence, it did not clearly err by using the 1:167 ratio in determining the drug quantity in connection with Faroun's possession of 1,400 grams of XLR-11. See Saingerard, 621 F.3d at 1343; see also United States v. Ramos, 814 F.3d 910, 920-21 (8th

5

Cir.), cert. denied, 137 S. Ct. 177 (2016) (including majority and dissenting opinions as to whether XLR-11 should be compared to THC or marijuana).

We also find no merit to Faroun's claim -- raised for the first time on appeal -- that the government failed to show that 16,088 grams of synthetic marijuana was attributable to him because Dr. Trecki's testimony only pertained to XLR-11, and there was no evidence presented at sentencing with regard to AB-Fubinaca and THJ-2201.[1] Notably, the notice of the factual basis for Faroun's guilty plea and the presentence investigation report ("PSI") referred to AB-Fubinaca as a synthetic cannabinoid and THJ-2201 as a synthetic cannabinoid analogue, without objection. Further, at sentencing, Faroun and the government both referred to all three substances collectively as synthetic marijuana or synthetic cannabinoids, without objection. While Dr. Trecki and Dr. DeCaprio focused in their expert testimony only on XLR-11, they both, at times, referred to synthetic cannabinoids collectively, and did not specifically draw a distinction between the various chemicals. Moreover, there is no precedent from the Supreme Court or this Court

---

[1] Although the government contends that Faroun invited any error by relying on Dr. Trecki's testimony and treating all synthetic cannabinoids alike, nowhere in the record did Faroun specifically induce or invite the district court to treat AB- Fubinaca and THJ-2201 in the same manner as XLR-11. See United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005) ("[I]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party. The doctrine of invited error is implicated when a party induces or invites the district court into making an error.") (citations and quotations omitted). Faroun's failure to object to an error by the district court is not sufficient to invoke the invited-error doctrine when, as here, there is no indication that he fully comprehended the error the sentencing court was going to commit and agreed to be bound by it. See United States v. Masters, 118 F.3d 1524, 1526 (11th Cir. 1997). As a result, we review the issue for plain error. See Zinn, 321 F.3d at 1087.

that directly resolves whether AB-Fubinaca or THJ-2201 are similar to XLR-11 or what ratio should be applied to them when determining the drug quantity for the purposes of sentencing.  See Lejarde-Rada, 319 F.3d at 1291.  On this record, we cannot say that the error, if any, in using the same 1:167 ratio to calculate the drug quantity for AB-Fubinaca and THJ-2201 that it used for XLR-11 was so plainly obvious that it should not have been permitted by the district court.  Hesser, 800 F.3d at 1325.  Accordingly, we affirm Faroun's sentence.

**AFFIRMED**.