**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robin SHRAWDER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 14, 2007.

Filed Dec. 31, 2007.

John C. Manning, Harrisburg, for appellant.

Timothy Reitz, Asst. Dist. Atty., Lewisburg, for Com., appellee.

1. 18 Pa.C.S.A. § 2910.

2. 18 Pa.C.S.A. § 6301.

BEFORE: STEVENS, BENDER, and DANIELS, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant Robin D. Shrawder (hereinafter "Appellant") appeals the order entered in the Court of Common Pleas of Lycoming County on October 11, 2006, denying Appellant's Motion for Declaratory Judgment seeking to preclude the use of a therapeutic polygraph as part of his sexual offender counseling. We affirm.

¶ 2 The salient facts and procedural history in the instant matter are as follows: The affidavit of probable cause attached to the criminal complaint indicates that on November 20, 2004, Appellant attempted to entice two sixteen year old girls to enter his vehicle and perform a sex act in exchange for money. The girls refused to comply with Appellant's request and informed Appellant of their ages, after which Appellant offered the girls more money to perform another sex act.

¶ 3 On April 12, 2005, Appellant pleaded *nolo contendere* to two counts of luring a child into a motor vehicle[1] and to two counts of corruption of minors.[2] The Commonwealth and Appellant entered into a plea agreement whereby Appellant would receive a sentence of probation in exchange for his plea.

¶ 4 On May 26, 2005, Appellant was sentenced to consecutive one year terms of probation on the two luring a child into a motor vehicle charges and on one count of corruption of minors, for an aggregate probation term of three years.[3] Appellant also was ordered to cooperate with any counseling or programs, including sexual offender counseling, which the Adult Pro-

3. The trial court sentenced Appellant to one year of probation on the second corruption of minors charge, which ran concurrently.

bation Office of Lycoming County might deem appropriate.

¶ 5 The Lycoming County Probation Office determined sexual offender counseling was appropriate in this matter. Appellant subsequently moved to Northumberland County, and the Lycoming County Probation Office had the Northumberland County Probation Office supervise Appellant's probation; Appellant was enrolled in sex offender counseling there.

¶ 6 On September 26, 2006, Appellant filed a Motion for Declaratory Judgment in which he asserted he cooperated with the counseling for a year, at which time he learned continued compliance meant he would need to submit to a polygraph test. Appellant argued compliance with the polygraph test would violate his rights under both the United States Constitution and the Pennsylvania Constitution.

¶ 7 A hearing was held on Appellant's petition on October 11, 2006, at which time testimony was taken from Mr. John Kobierecki, the therapist in charge of the sexual counseling group in which Appellant was participating. Mr. Kobierecki testified that the therapeutic polygraph is performed once a year as part of normal operating procedures in the sex therapy counseling program. N.T., 10/11/06, at 22. He explained the therapeutic polygraph is an integral part of the counseling process in that it helps the counselor work to rehabilitate the offender and assists the offender in confronting his honesty. N.T., 10/11/06, at 24–25. Mr. Kobierecki stressed the primary goal of the test is to aid in a counselor's rehabilitative efforts with an offender and protect the community, not to return an offender to prison. N.T., 10/11/06, at 26. Mr. Kobierecki never had seen an individual returned to prison for a probation or parole violation when he failed a polygraph test taken pursuant to his therapy. N.T., 10/11/06, at 28.

¶ 8 When asked what types of questions are posed during a therapeutic polygraph, Mr. Kobierecki indicated they are determined by the individual offender. In general, neutral questions are interspersed with queries that may probe an offender's past contact and/or sexual activity with a minor or his or her involvement with child pornography. N.T., 10/11/06, at 25–26. Essentially, the questions asked during the polygraph are the same as those posed during counseling sessions. N.T., 10/11/06, at 30.

¶ 9 After hearing testimony, the trial court entered an Order on October 11, 2006, in which it found the use of a therapeutic polygraph test to be a reasonable condition of probation in the sexual offender counseling of Appellant.

¶ 10 On October 27, 2006, Appellant filed a Notice of Appeal, and on October 30, 2006, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant filed the same on November 8, 2006.

¶ 11 On December 21, 2006, Appellant filed an "Application for Stay of Court's Order Pending Appeal Pursuant to Rules of Appellate Procedure No. 1732." On January 24, 2007, the trial court denied Appellant's petition. In a Per Curiam Order filed on January 25, 2007, this Court also denied Appellant's petition.

¶ 12 On February 23, 2007, the trial court filed its Opinion pursuant to Pa. R.A.P. 1925(a).

¶ 13 In his brief, Appellant raises the following issue for our review:

Whether a full disclosure polygraph during sexual abuse counseling for which refusing to answer would be considered a probation violation is a violation of a probationer's U.S. Constitutional Fifth Amendment and Pennsylvania Constitu-

tional Article One, Section Nine Rights and thus an unreasonable condition of probation.

Brief for Appellant at 4.

 ¶ 14 In response to Appellant's argument, the Commonwealth avers the instant appeal is not ripe for appellate review in that Appellant never has been subjected to any incriminating questions in a therapeutic polygraph examination and has not had any incriminating statements used against him. In the alternative, the Commonwealth claims the trial court's requirement that Appellant be subjected to a therapeutic polygraph test during the therapy which he is required to undergo as a condition of his parole does not violate his constitutional rights.[4] Before we may reach the latter contention we must consider the former.

¶ 15 Our research has not revealed a case in which this Court directly addressed the issue of the ripeness of an appeal when a therapeutic polygraph test has not been administered; however, we are guided by other jurisdictions which ruled upon a similar issue.

¶ 16 Generally, ripeness is satisfied by a "direct threat of personal detriment" such that litigants "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Generally, a challenge lacks ripeness if it concerns abstract regulations or if it presents issues that might never arise. *Motor Vehicle Mfrs. Ass'n v. New York State Dept. of Envtl.*

*Conservation*, 79 F.3d 1298, 1305 (2d Cir. 1996).

¶ 17 In *United States v. Zinn*, 321 F.3d 1084 (11th Cir.2003), the appellant was convicted of possessing child pornography and sentenced to three years' supervised release which included as a special condition that he submit to a polygraph test, at his own expense, as part of the sexual offender treatment program in which he was required to participate. The defendant asserted, *inter alia*, the condition violated his Fifth Amendment privilege against self-incrimination. Before considering the merits of this argument, the Court discussed its ripeness for review. In finding the challenge to be neither premature nor speculative, the Court noted the district court's sentence, of which the conditions of supervised release were a part, was a final, immediately appealable judgment. *Id.* at 1088. The Court stated that though the appellant was presently incarcerated, it was apparent he would be subject to the challenged condition upon his release. *Id.* at 1088–1089.[5]

¶ 18 In a case wherein the United States Probation Department petitioned the district court to modify a sex offender's conditions of probation to include mandatory sex-offender treatment which included polygraph testing, the lower court granted the petition and placed limits upon the scope of the information which could be obtained from the test. The appellant appealed claiming the condition would amount to a compelled incrimination. *United States v. Johnson*, 446 F.3d 272

---

4. The Pennsylvania Board of Probation and Parole has submitted a brief as *amicus curiae* in support of the Commonwealth which echoes these arguments.

5. While noting that there had been no potentially incriminating question posed at that juncture, the Court stated that "[i]f and when [the a]ppellant is forced to testify over his

valid claim of privilege, he may raise a Fifth Amendment challenge. In the meantime, we can only decide whether requiring polygraph testing as a condition of supervised release generally violated the Fifth Amendment so as to amount to plain error. We hold it does not." *Id.* at 1092.

(2nd Cir.2006) *cert. denied. Johnson v. U.S.*, —— U.S. ——, 127 S.Ct. 425, 166 L.Ed.2d 270 (2006). When determining whether the Constitutional challenge was ripe for review, the court noted it was unaware of an instance in which it had previously considered ripeness in that context and explained that several other circuit courts that had considered similar constitutional challenges all found them ripe for decision, "regardless of whether the defendant had yet suffered penal injury." *Id.* at 279. The Court noted that the appellant had not suffered injury as a result of polygraph testing at the time of his appeal, but could do so were he to truthfully confess a new offense during testing, falsely deny the offense for which he had been punished, or invoke the Fifth Amendment to avoid providing an answer. *Id.* at 278. The Court reasoned that: "Unless the self-incrimination issue raised by a condition of supervised release is deemed ripe when it is imposed, an offender who believes the Fifth Amendment protects his statements must face the threat of prison, either in a new criminal prosecution or in a revocation proceeding. [Appellant's] challenge is therefore ripe." *Id.* at 279.

¶ 19 Though there is no indication in the record herein what action the trial court would take with regard to Appellant's probationary status were he to "fail" a therapeutic polygraph test, the record is clear that therapy is a condition of Appellant's sexual abuse counseling which is a requirement of his probation, and Appellant does not intend to submit to it. His refusal to participate in the polygraph shall result in a situation where his counseling can no longer continue and arguably may subject him to a revocation hearing. As such, we find Appellant's challenge to the polygraph condition is ripe for our review because Appellant: "faces a sufficiently direct and immediate dilemma ... as he seeks to determine whether exercising his Fifth Amendment privilege in response to questions by his probation officer will result in revocation of his supervised release." *United States v. Davis*, 242 F.3d 49, 51 (1st Cir.2001) (per curiam) (internal quotation marks and citations omitted). Therefore, we will next discuss the merits of Appellant's claim.

■ ¶ 20 The Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The United States Supreme Court addressed the significance of the Fifth Amendment with regard to probationers and stated that the Amendment "applies not only at criminal trials, but in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the defendant] in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (citation omitted). Finally, our Supreme Court has held that the protections afforded against self-incrimination by Article I, § 9 of the Pennsylvania Constitution provide no greater rights than the Fifth Amendment to the United States Constitution. *Commonwealth v. Arroyo*, 555 Pa. 125, 723 A.2d 162, 166–67 (1999).

¶ 21 Once again, our research has uncovered no appellate precedent in the Commonwealth to provide guidance with respect to the propriety of therapeutic polygraphs in sex offender cases and the consequences for a probationer's refusal to submit to the same on Constitutional grounds. As such, we have sought guidance from other jurisdictions regarding this issue and found that the majority of jurisdictions in which the constitutionality of therapeutic polygraph tests has been determined have permitted the use of the tests with some limitations based upon the

information that may be sought through questioning.

¶ 22 In an oft-cited case, the United States Supreme Court analyzed the Fifth Amendment in the context of a probation officer's questioning of a probationer in *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). There, the issue analyzed was whether the appellant's Fifth Amendment right had been violated when prior statements he made to his probation officer were admitted into evidence at his trial for another crime. The Court stressed "the nature of probation is such that probationers should expect to be questioned on a wide range of topics relating to their past criminality." *Id.* at 432, 104 S.Ct. 1136. The Court noted the appellant was not under arrest when he spoke to his probation officer and was free to leave at the end of his meeting with her. The Court further explained that:

> A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution. 7

> 7. The situation would be different if the questions put to a probationer were relevant to his probationary status and

posed no realistic threat of incrimination in a separate criminal proceeding. If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime. Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.

[ ]Our cases indicate, moreover, that a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's "right to immunity as a result of his compelled testimony would not be at stake," and nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of proba-

tion or from using the probationer's silence as "one of a number of factors to be considered by a finder of fact" in deciding whether other conditions of probation have been violated.

*Id.* at 436, 104 S.Ct. 1136 (internal citations and quotations omitted).

¶ 23 The Court ultimately held that the interview between a probation officer and a probationer does not constitute a custodial interrogation; thus, a probationer was not being compelled to provide answers to a probation officer's questions in such a situation.

¶ 24 In a case analyzing the constitutionality of post-conviction polygraph examinations, the Third Circuit concluded that a requirement of polygraph testing during therapy did not violate a probationer's Fifth Amendment privilege, because that condition alone did not force him to answer incriminating questions. *United States v. Lee,* 315 F.3d 206, 212 (3rd Cir.), *cert. denied Lee v. U.S.,* 540 U.S. 858, 124 S.Ct. 160, 157 L.Ed.2d 106 (2003). The *Lee* Court indicated that a probationer's failure of the polygraph examination would not in itself result in a violation of probation and that the test was vital in assisting the probation officer with his or her supervision and monitoring of the probationer. *Id.* at 212–213.

¶ 25 Moreover in *United States v. Johnson, supra,* the Court acknowledged that: polygraph results are inadmissible as evidence. But that does not much bear on the therapeutic value of the tool:

[T]he polygraph test ... is inadmissible in nearly every circumstance at trial. Obviously, however, evidentiary cases do not govern our evaluation of the use of polygraphs in connection with the treatment of an offender. *The use of a polygraph test here is not aimed at gathering evidence to inculpate or exculpate [the offender]. Rather, the test is con-*

*templated as a potential treatment tool upon [an offender's] release from prison* . . . .

*Johnson,* 446 F.3d at 278 (citation omitted) (emphasis in original).

¶ 26 The Court also stressed that:

[t]he polygraph can help penetrate deception and encourage an offender to confront his own motivations and behaviors. These outcomes further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty. We therefore conclude that polygraph testing can, and in this case does, further sentencing goals without excessive deprivations of liberty.

*Id.*

¶ 27 Herein, the trial court indicated it has warned probation officials not to ask Appellant questions during a therapeutic polygraph test concerning any specific, pre-probation victims as the court felt such specific questioning could arguably raise a Fifth Amendment right to remain silent. The court further noted that admonishment did not permit Appellant to avoid answering general questions concerning past conduct. Trial Court Opinion, 2/23/07, at 5.

¶ 28 In line with the trial court's directives herein, Appellate courts in other states have permitted the use of therapeutic polygraph tests with some limitations placed on the questions posed therein. (*See Gyles v. State of Alaska,* 901 P.2d 1143 (Alaska App.1995), questions posed during polygraph regarding conduct for which appellant was convicted did not pose a hazard of incrimination and deemed proper as part of sex offense counseling, but case remanded to trial court for a determination of whether information gleaned through the polygraph could implicate the defendant in later criminal pro-

ceedings; *Mangarella v. State*, 117 Nev. 130, 17 P.3d 989 (2001), statute imposing mandatory conditions of probation on individuals convicted of certain sexual offenses and authorizing therapeutic polygraphs for parolees constitutional if the questioning "reasonably relates" to the purpose of probation and is not utilized as investigative tool which might result in the disclosure of previously unreported criminal behavior; *People v. Miller*, 208 Cal.App.3d 1311, 256 Cal.Rptr. 587 (1989), condition of probation that appellant submit to a polygraph examination at the direction of his probation officer proper where inquiries were limited to those relevant to monitoring appellant's compliance with other probation conditions; *State v. Riles*, 135 Wash.2d 326, 957 P.2d 655 (1998), finding therapeutic polygraphs valid as necessary and effective monitoring tools to ensure compliance with conditions of community placement, though the scope of testing must be limited to crime related topics).

¶ 29 Finally, the Commonwealth notes in its brief that this Court has analyzed the privilege against self incrimination in contexts similar to the instant case, and the rationale we employed therein is instructive herein. Specifically, the Commonwealth cites to *Commonwealth v. Kopicz*, 840 A.2d 342 (Pa.Super.2003), in which we rejected the appellant's claim that a post-conviction assessment would violate a sexual offender's privilege against self-incrimination, because the purpose of the interview was to determine whether the offender met the criteria to be a sexually violent predator, not to discover incriminating evidence from him. *See* Brief for Appellee at 21. In that case we noted that at the assessment stage of the proceedings, the appellant would no longer be subject to prosecution as his guilt had already been determined; therefore, any

statements he or any other offender might make during an assessment hearing could not be used to "incriminate" him. *Kopicz*, 840 A.2d at 350.

■ ¶ 30 Upon considering the caselaw cited above and the testimony presented at the October 11, 2006, hearing, we find the therapeutic polygraph is an essential tool for a therapist whose job it is to reveal an offender's deception and encourage him or her to confront his or her urges and deviant behavior. The test results further the primary goal of counseling as part of a sexual offender's sentence, which is to rehabilitate the offender and prevent recidivism, with reasonably small incremental deprivations of the offender's liberty. We also note that, as Mr. Kobierecki's testimony indicates, the candor of Appellant or any other probationer is always expected during a probation inquiry, whether or not his responses are being recorded through a polygraph test. We therefore conclude that polygraph testing can, and in this case does, further sentencing goals without excessive deprivations of liberty and hold that a therapeutic polygraph is a proper element in a sex offender treatment program for a convicted sexual offender and does not violate a probationer's rights under the Fifth Amendment to the United States Constitution or under Article One, Section Nine of the Pennsylvania Constitution, so long as the inquiries made pursuant to it relate to the underlying offense for which an offender has been sentenced and do not compel him or her to provide information that could be used against him or her in a subsequent criminal trial.[6]

¶ 31 Order Affirmed.

6. We are compelled to extend our analysis to

discuss the import of Appellant's pleading

*nolo contendere*, rather than guilty, to the charges for which he was sentenced. When analyzing the propriety of therapeutic polygraphs in sexual offender counseling, the Court of Common Pleas of Lebanon County recently refused the Commonwealth's request for a parole revocation and determined that therapeutic polygraphs may be employed as a therapeutic tool during sex offender treatment only if the Commonwealth and the defendant have not entered into a *nolo contendere* plea agreement. *Commonwealth v. Camacho–Vasquez*, 81 D & C.4th 353 (Lebanon Cty.2007). The court reasoned that though it is clear for sentencing purposes a plea of *nolo contendere* is to be treated the same as a guilty plea, when one pleads *nolo contendere* rather than guilty, there is a significant difference in terms of what the defendant is acknowledging under oath: The court explained: "When a defendant enters a plea of guilty, he is required to acknowledge under oath that he committed the offense charged. In contrast, a *nolo contendere* plea merely requires that a defendant acknowledge he has no defense. As it relates to this case, the difference between a guilty plea and a *nolo contendere* plea has more than semantic import." *Id.* at 365.

There, the probationer's probation had been revoked as a result of his refusal to admit guilt during a therapeutic polygraph test. The trial court proclaimed that had the defendant pled guilty and failed to confront the details of the crime to which he pled in a therapeutic setting, he may be subject to a parole revocation, if the sentencing judge deemed such a punishment proper following a hearing to inquire about the purpose of the polygraph and the questions asked during it. *Id.* at 365–366. The court recommended the Commonwealth may avoid such a situation by refusing to offer a *nolo contendere* plea.

Appellant herein has not made issue of the type of plea in which he entered with the Commonwealth, and he has not yet been asked any questions regarding his behavior on November 20, 2004. We will not delve into the difference, if any, in the permissibility of questions during a therapeutic polygraph where one pleads *nolo contendere* instead of guilty, as this discussion is premature. Appellant remains free to assert his Fifth Amendment privilege if any incriminating questions or coercive tactics are actually employed during the polygraph examination.