COMMONWEALTH of Pennsylvania,
Appellee

v.

Terry L. SNAVELY, Appellant.

Superior Court of Pennsylvania.

Submitted July 13, 2009.
Filed Oct. 30, 2009.

Janice L. M. Longer, Lancaster, for appellant.

Daniel J. Dye, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: KLEIN, FREEDBERG and CLELAND, JJ.

OPINION BY CLELAND, J.:

¶ 1 Appellant Terry L. Snavely (Snavely) appeals the order revoking his parole on a sentence of imprisonment imposed on a corruption of minors charge to which he had entered an *Alford* plea.[1] Be-

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An *Alford* plea is a *nolo contendere* plea in which the defendant does not admit guilt but waives

cause the parole-violation order recommitted him to prison but made him immediately eligible again for parole on condition he enroll in a sex offender treatment program which required an admission of guilt to the original corruption of minors offense,[2] he contends invoking his Fifth Amendment privilege against self-incrimination renders impossible his ability to satisfy the condition. As such, he submits the sentence is manifestly unreasonable. For the reasons that follow, we affirm.

¶ 2 In April 2006, the Commonwealth charged Snavely with involuntary deviate sexual intercourse with a child, indecent assault of a child, and corruption of minors involving a six year-old girl.[3] On March 6, 2007, Snavely negotiated an *Alford* plea agreement in which he pled *nolo contendere* to the corruption of minors charge[4] while the other charges were dropped. On the same day, the trial court, following an appropriate colloquy, sentenced Snavely to the negotiated sentence of time-served to 23 months' incarceration plus 3 years' consecutive probation, and, among other requirements, to enrollment in a Lancaster County approved sex offender treatment program. N.T. Guilty Plea/Sentencing, 3/6/07, at 3–4. On June 17, 2008, a *capias* issued alleging Snavely had violated his parole conditions by suffering a new simple assault charge. On October 10, 2008, the trial court held a parole violation hearing at which the evidence revealed not only

the new assault charge but also Snavely's failure to enroll in the sex offender treatment program. Snavely explained that none of the approved sex offender treatment agencies would enroll any offender who, like Snavely, refused to admit guilt of the sex offenses for which sentenced. N.T. Parole Violation, 10/10/08, at 4, 6. On October 10, 2008, the trial court sentenced Snavely to the unexpired balance of his original maximum sentence on the corruption of minors conviction *but subject to immediate release on parole upon enrollment in the sex offender treatment program.* Because Snavely refuses to admit guilt to the corruption of minors offense, he cannot enroll and, thus, remains incarcerated. On October 21, 2008, the trial court denied Snavely's motion to reconsider sentence seeking relief from the sex offender treatment program condition and immediate release from prison.

¶ 3 Snavely filed a timely appeal raising a single issue for review: "Did the court impose an unreasonable sentence which contravenes the policy underlying the sentencing code where the sentence is manifestly unreasonable, requires that [Snavely] adhere to a condition which is impossible to meet, and where the sentencing court failed to consider any reasonable alternative to the condition imposed?" Appellant's Brief at 4.

trial and voluntarily, knowingly and understandingly consents to the imposition of punishment by the trial court. *Id.* at 37, 91 S.ct. 160. Provided the record reflects a factual basis for guilt, the trial court may accept the plea notwithstanding the defendant's protestation of innocence. *Id.* Typically, as in the present case, a defendant is exchanging his plea for a reduced sentence or reduced charges. *See Commonwealth v. Gunter*, 565 Pa. 79, 88, 771 A.2d 767, 773 (2001) (Justice Cappy concurring).

**2.** According to the trial court and the probation officer, the program does not require a parolee to admit to unrelated offenses. Parole Violation, 10/10/08, at 4, 6. Nor is there any evidence in the record to the contrary.

**3.** 18 Pa.C.S.A. §§ 3123(b), 3126(a)(7), and 6301(a)(1), respectively.

**4.** According to the Information, a variety of sexual acts with the victim between November 13, 2005, and January 18, 2006, at a specific address formed the basis of the charge. Information, 4/24/06, at 1.

¶ 4 Before we address this issue, we note Snavely need not demonstrate a substantial question as required by the Sentencing Code,[5] 42 Pa.C.S.A. § 9781(b) (Appellate review of sentences) and Pa.R.A.P. 2119(f) (Discretionary aspects of sentences). We have previously pointed out:

Clearly, the order revoking parole does not impose a new sentence; it requires appellant, rather, to serve the balance of a valid sentence previously imposed. Moreover, such a recommittal is just that-a recommittal and not a sentence.... Therefore, an appellant contesting a revocation of parole need not comply with the provisions of Pa.R.A.P. 2119(f) by first articulating a substantial question regarding the discretionary aspects of sentencing.

*Commonwealth v. Mitchell,* 429 Pa.Super. 435, 632 A.2d 934, 936 (1993) (internal citation omitted).

¶ 5 "Following parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in confinement." *Commonwealth v. Kalichak,* 943 A.2d 285, 291 (Pa.Super.2008) (citing *Mitchell,* 632 A.2d at 936). Snavely, however, has not challenged the recommitment aspect of the trial court's parole revocation order, and, therefore, he has waived it on appeal.

¶ 6 Characterizing Snavely's challenge as a challenge to the legality of the sexual-offender-treatment-program condition in the parole-revocation order does merit review. "Challenges to an illegal sentence cannot be waived and may be reviewed *sua sponte* by this Court." *Commonwealth v. Mears,* 972 A.2d 1210, 1211 (Pa.Super.2009).

¶ 7 Snavely's challenge to the legality of his parole-violation sentence turns on the application of the Fifth Amendment to the Lancaster County sex offender treat-

ment program. He relies on two cases *United States v. Lee,* 315 F.3d 206 (3d Cir.2003) and *United States v. Antelope,* 395 F.3d 1128 (9th Cir.2005).

¶ 8 In *Antelope,* the Court of Appeals held a supervised release program requiring successful completion of a similar sex abuse program violated the defendant's Fifth Amendment privilege against self-incrimination. The program required him to disclose his complete sexual history and submit to random polygraph examinations during which he would be compelled to answer questions about past sex crimes which might expose him to new criminal charges. When he invoked his Fifth Amendment privilege and refused to comply, the trial court revoked his supervised release and returned him to prison.

¶ 9 Reversing the trial court, the Court of Appeals laid the groundwork of familiar Fifth Amendment jurisprudence:

To establish his Fifth Amendment claim, Antelope must prove two things: (1) that the testimony desired by the government carried the risk of incrimination, *see Murphy,* 465 U.S. at 435 n. 7, 104 S.Ct. 1136, 79 L.Ed.2d 409 (explaining that the state may compel answers "as long as it ... eliminates the threat of incrimination"); *Minor v. United States,* 396 U.S. 87, 98, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969) (rejecting a Fifth Amendment challenge because the risk of incrimination was "only imaginary and insubstantial ... rather than ... real and appreciable" (internal quotation marks omitted)), and (2) that the penalty he suffered amounted to compulsion, *see Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("[T]he touchstone of the Fifth Amendment is compulsion ...."); *cf. Lile v. McKune,* 224 F.3d 1175, 1179 (10th Cir.

**5.** 42 Pa.C.S.A. §§ 9701 –9909.

2000) ("The privilege has two components: incrimination and compulsion."), rev'd, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (holding the state-imposed repercussions insufficiently coercive to amount to compulsion). *Id.* at 1134 (citing *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)). Pertinent to Snavely's dilemma, the Court of Appeals stressed "The Fifth Amendment privilege is only properly invoked in the face of 'a real and appreciable danger of self-incrimination.'" *Id.* Illustrating its point, the Court stated with unintended reference to Snavely:

> [The Fifth Amendment] may only be invoked when the threat of future criminal prosecution is reasonably particular and apparent. *Cf.* [*Brown v. Walker,* 161 U.S. 591, 598, 16 S.Ct. 644, 40 L.Ed. 819 (1896) ] ("[I]f a prosecution for a crime ... is barred by the statute of limitations, [a witness] is compellable to answer."); *Neal v. Shimoda,* 131 F.3d 818, 833 (9th Cir.1997) (holding that a prison treatment program requiring inmates to admit guilt of the crime for which they were imprisoned did not violate the Fifth Amendment because double jeopardy and the terms of their plea agreement insured that "no admission ... could be used against them").

*Id.*

¶ 10 Therefore, because the Lancaster sex offender program limits the intrusion into his sexual biography to those incidents underlying his corruption of minors conviction, Snavely cannot properly invoke the Fifth Amendment. The Double Jeopardy Clause of the Fifth Amendment and his *Alford* plea agreement preclude further prosecution. If he refuses to answer questions that no longer place him at risk, he will be in violation of reasonable terms of his parole. "A probationer may not refuse to answer a question just because his answer would disclose a violation of probation; rather, a probationer may only invoke his privilege against self-incrimination if a truthful answer would expose him to a prosecution for a crime different from the one on which he was already convicted." *United States v. Lee,* 315 F.3d at 213 (citing the U.S. Supreme Court decision, *Murphy,* 465 U.S. at 435–436 n. 7, 104 S.Ct. 1136 (1984)).

¶ 11 Snavely's reliance on *Lee,* like his reliance on *Antelope,* is misplaced. In *Lee,* where a defendant, convicted of sex-related crimes, challenged a condition of supervised release on the ground the government compelled him to undergo random polygraph examinations, the Court of Appeals confronted the question whether the polygraph condition compelled Lee to answer the questions and thus waive his Fifth Amendment privilege. On facts similar in principle to Snavely's situation, the Court of Appeals held:

> The polygraph condition also does not violate Lee's Fifth Amendment right because the condition does not require him to answer incriminating questions. *Cf. Owens v. Kelley,* 681 F.2d 1362, 1369 (11th Cir.1982) (holding that the condition requiring probationer to submit to "Psychological Stress Evaluation" examinations did not violate his constitutional rights because it did not stipulate that he must respond to incriminating questions). There is no evidence that Lee's ability to remain on probation is conditional on his waiving the Fifth Amendment privilege with respect to future criminal prosecution. *See Murphy,* 465 U.S. at 437, 104 S.Ct. 1136, 79 L.Ed.2d 409.... [But][ ] if a question is asked during the polygraph examination which calls for an answer that would incriminate appellant in a future criminal proceeding, Lee retains the right to invoke

his Fifth Amendment privilege and remain silent.

*Lee*, 315 F.3d at 212–213.

¶ 12 We, too, have previously discussed the central issue in this case. In *Commonwealth v. Shrawder*, 940 A.2d 436 (Pa.Super.2007), we discussed a probationer's Fifth Amendment privilege in the context of the rehabilitative benefits of therapeutic polygraphs in sex counseling programs:

> [W]e find the therapeutic polygraph is an essential tool for a therapist whose job it is to reveal an offender's deception and encourage him or her to confront his or her urges and deviant behavior. The test results further the primary goal of counseling as part of a sexual offender's sentence, which is to rehabilitate the offender and prevent recidivism, with reasonably small incremental deprivations of the offender's liberty.... We therefore conclude that polygraph testing can, and in this case does, further sentencing goals without excessive deprivations of liberty and hold that a therapeutic polygraph is a proper element in a sex offender treatment program for a convicted sexual offender and does not violate a probationer's rights under the Fifth Amendment to the United States Constitution or under Article One, Section Nine of the Pennsylvania Constitution, **so long as the inquiries made pursuant to it relate to the underlying offense for which an offender has been sentenced and do not compel him or her to provide information that could be used against him or her in a subsequent criminal trial.**

*Id.* at 443 (footnote omitted) (emphasis added).[6]

¶ 13 To quote the sentencing judge, Judge Jeffrey D. Wright, "The keys to the prison are in [Snavely's] control—he is eligible for parole without petition upon his acceptance into a program of the type he specifically agreed to when he plead over to this Court. If he chooses not to fulfill that condition and remain in prison, then that decision is his, and his alone." Rule 1925 Opinion, 12/31/08, at 8.

¶ 14 We conclude the trial court did not commit error in imposing the sexual offender treatment program as a condition to parole.

¶ 15 Affirmed. Jurisdiction relinquished.

¶ 16 KLEIN, J., files a Dissenting Opinion.

## DISSENTING OPINION BY KLEIN, J.:

¶ 1 I respectfully dissent. It is true that Snavely's *nolo contendere* plea has the same effect as a guilty plea for punishment purposes. However, that does not affect the issue as to whether he did anything to violate the conditions of his parole. He was not admitted into any programs merely because he refused to acknowledge that he committed the crimes.

¶ 2 Since he *never* admitted his guilt because he pled *nolo contendere* rather than guilty, he is not going back on anything he said previously.

¶ 3 I believe there are two possibilities here, neither of which should require Snavely to automatically be returned to prison.

1. Although found guilty, he did not actually commit the offenses and is telling the truth.

---

6. Interestingly, because the defendant in *Shrawder* elected not to raise the issue, we reserved for a later date the impact of a *nolo contendere* plea on the question whether a defendant could be compelled to answer ques-

tions about his underlying offenses when, by his plea, he has refused to admit guilt. *Id.* at 443 n. 6 (discussing *Commonwealth v. Camacho–Vasquez*, 81 D & C.4th 353 (Lebanon County 2007)).

2. If part of Snavely's problem is that he is blocking on admitting to himself that he committed the crimes, that part of his mental health problem should be addressed rather than sending him back to jail. If Snavely has a problem with admitting his fault, there should be some treatment program that will address sexual offenders who deny responsibility.

¶ 4 Snavely did not refuse to participate in a sex offender's program. There must be multitudes of psychologists or psychiatrists who would treat someone charged with sex offenses who does not admit his/her guilt to probe them to see if they *would* admit their guilt.[1] The Commonwealth should not be permitted after a plea, where guilt is *not* admitted, to impose a condition of parole or probation that the Commonwealth should know is impossible to be fulfilled. Here, the Commonwealth entered into a plea arrangement after Snavely refused to acknowledge guilt. The Commonwealth should know that no Lancaster County judge approved sex offender treatment program would accept Snavely when he did not acknowledge guilt. Therefore, the Commonwealth in exchange for a no-contest plea, imposed a condition of parole or probation that was impossible to be carried out. Because it was impossible, it should be vacated.

¶ 5 If the Commonwealth believes that therapeutic sex offender treatment is important and knows a defendant does not admit his guilt, it has an obvious remedy—refuse the proffer of a *nolo contendere* plea. If the Commonwealth or the victim perceives that sex offender therapy is particularly important for a given defendant, all the Commonwealth need do is insist upon a guilty plea or proceed to trial.

Here, because the parties agreed to the *nolo contendere* plea, and because it would be unfair to incarcerate Snavely under the circumstances presented, I would refuse the Commonwealth's motion to revoke Snavely's parole.

¶ 6 Additionally, this Court has held that, "[t]hroughout its history ... the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer of leniency." *Commonwealth v. Boyd*, 221 Pa.Super. 371, 292 A.2d 434, 435 (1972) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). Therefore, when Snavely pled *nolo contendere* he accepted that his punishment would be the same as if he had pled guilty. However, there is no case law that extends the similarities of the pleas to a parolee's recommitment when the Commonwealth imposes an impossible condition.

¶ 7 For these reasons, I must respectfully dissent.

---

1. There are only three sex offender programs that have been approved by Lancaster County. However, Snavely's attorney mentioned that there was a program that does work with people who have pled *nolo contendere*. *See* N.T. Parole Violation, 10/10/08, at 5.