## Commonwealth v. Schur

*Susan Moyer, assistant district attorney,* for Commonwealth.

*Walter R. Schur Jr.,* pro se.

ASHWORTH, *J.,* December 8, 2009—Walter Schur has filed an appeal to the Superior Court of Pennsylvania from this court's denial of his pro se "motion to vacate revocation order" on October 13, 2009. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## I. BACKGROUND

On March 15, 2000, a criminal complaint was filed against Schur charging him with indecent assault and corruption of minors.[1] The basis for these charges was

---

1. 18 Pa.C.S. §3126(a)(7) and 18 Pa.C.S. §6301(a), respectively.

an allegation that between August 30, 1999 and September 23, 1999, Schur engaged in sexual contact with his daughter, S.S., who was 7 years of age at the time the offenses occurred. These charges were eventually indexed to Information no. 2099-2000.

On March 28, 2000, a second criminal complaint was filed against Schur related to the continuing sexual abuse of his daughter, S.S., between April 1, 1998 and October 19, 1998. As subsequently amended, the charges included aggravated indecent assault, indecent assault and corruption of minors.[2] These charges were eventually indexed to Information no. 2100-2000.

On March 23, 2001, appellant entered a plea of guilty to all of the charges referenced above. The plea was entered pursuant to an agreement calling for specific sentencing terms. This court accepted the guilty plea but deferred sentencing, and ordered appellant to undergo an assessment by the State Sex Offenders Assessment Board to determine whether appellant should be classified as a "sexually violent predator"[3] pursuant to the Registration of Sexual Offenders Act, commonly referred to as Pennsylvania's Megan's Law, 42 Pa.C.S. §9791 et seq., because of his plea of guilty to the predicate of-

---

2. 18 Pa.C.S. §3125(7), 18 Pa.C.S. §3126(a)(7), and 18 Pa.C.S. §6301(a), respectively.

3. A sexually violent predator is defined as "[a] person who has been convicted of a sexually violent offense as set forth in [42 Pa.C.S. §9795.1 (relating to registration)] and who is determined to be a sexually violent predator under [42 Pa.C.S. §9795.4 (relating to assessments)] due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9792.

fenses of aggravated indecent assault and indecent assault.

Thereafter, appellant filed a motion for extraordinary relief on May 3, 2001, requesting the court to strike as unconstitutional the "sexually violent predator" provisions of Megan's Law and to bar a second prosecution for the same offense. Appellant's case was consolidated for oral argument on the Megan's Law issue with four other similar cases in the Court of Common Pleas of Lancaster County.[4] The Honorable Louis J. Farina and the undersigned heard oral argument on July 17, 2001. On August 7, 2001, the court entered an order granting appellant's motion and declaring the "sexually violent predator" provisions of Megan's Law constitutionally invalid under the due process clause of the 14th Amendment to the United States Constitution. The Commonwealth appealed that decision to the Supreme Court of Pennsylvania on August 28, 2001.

On September 17, 2001, the court imposed sentence on appellant in accordance with the terms of the March plea agreement. Specifically, appellant received the following sentence on Information no. 2100-2000: (1) Count 1, aggravated indecent assault, two to four years incarceration split sentence of five years consecutive probation; (2) Count 2, indecent assault, five years probation; and (3) Count 3, corruption of minors, five years probation concurrent with Count 2 but consecutive to

---

4. Those related cases were: *Commonwealth v. Murray,* no. 1367-1999; *Commonwealth v. Gaytan,* no. 1103-2000; *Commonwealth v. Acklin,* nos. 3944-2000, 3946-2000, 3947-2000; and *Commonwealth v. Peters,* no. 1553-2001.

the Count 1 prison sentence. On Information no. 2099-2000, appellant received a sentence of five years probation on each charge (indecent assault and corruption of minors), concurrent with each other but consecutive to the prison sentence imposed on Count 1 of no. 2100-2000. Appellant was further ordered to pay fines and costs, and to attend sex offender counseling. Schur was represented at the guilty plea and sentencing by the Public Defender's Office of Lancaster County, specifically, Scott K. Oberholtzer.

Appellant's five-year probation became effective March 29, 2004. On March 23, 2004, the Pennsylvania Supreme Court issued its order reversing the order of the Lancaster County Court declaring the Registration of Sexual Offenders Act unconstitutional, and remanding this case for further proceedings in accord with *Commonwealth v. Gomer R. Williams (Williams II)*, 574 Pa. 487, 832 A.2d 962 (2003). Accordingly, on April 13, 2004, the court issued a rule to show cause why appellant should not undergo the mandatory assessment by the Sexual Offenders Assessment Board as required by Megan's Law. On April 27, 2004, appellant filed a "motion to dismiss based on non-retroactive application of the sexually violent predator provisions of Megan's Law II," which, after being fully briefed and argued by the parties, was ultimately denied by the court on October 20, 2005. Appellant also filed on June 23, 2004, a "motion for evidentiary hearing and argument on remand to address the constitutionality of the sexually violent predator provisions of Pennsylvania's Megan's Law II, to suppress evidence, and to bar a second prosecution for the same offense."

While these matters were pending before the court, appellant was discharged from sex offender treatment at T. W. Ponessa & Associates for failure to comply with the treatment contract. As a result, a capias was filed on February 25, 2005, charging Schur with violating the rules and regulations of probation as a result of having been discharged from treatment, a specific condition of his probation. On April 28, 2005, appellant appeared before this court for a probation violation hearing. At that time, a violation was found and Schur's probation was revoked. Sentencing was deferred pending the filing of a presentence investigation report.

Thereafter, pursuant to the Supreme Court order of March 23, 2004, a "sexually violent predator" hearing was scheduled for September 16, 2005, then rescheduled for October 27, 2005 and finally moved to December 8, 2005. On November 17, 2005, however, the Commonwealth filed a motion to withdraw the request for a "sexually violent predator" hearing after having been notified that the Sexual Offenders Assessment Board determined that Schur did not meet the criteria to be classified as a sexually violent predator, as set forth in 42 Pa.C.S. §9795.5.

Appellant stood for sentencing on his probation violation on December 8, 2005, and received concurrent sentences of two and one-half to five years incarceration for the offenses of indecent assault and corruption of minors at no. 2099-2000 and concurrent sentences of two and one-half to five years incarceration for the offenses of aggravated indecent assault, indecent assault and corruption of minors at Information no. 2100-2000. The sentences at no. 2099-2000 were concurrent with

the sentences imposed at no. 2100-2000. Schur did not file any post-sentence motions, nor did he file an appeal with the Superior Court of Pennsylvania from his judgment of sentence. Appellant was represented at the probation violation hearing and sentencing by the Public Defender's Office of Lancaster County, specifically, Charles Thomas, Esquire.

On August 21, 2009, eight years after entering his original guilty plea, Schur filed a motion to withdraw guilty plea. In his pleading, Schur averred that the 2001 negotiated plea agreement was for "two-four years incarceration to be followed by 10 years special probation and 10 years of registration under Megan's Law." Appellant claimed to have been informed by the Pennsylvania State Police and the Pennsylvania Department of Corrections that he is subject to lifetime registration under Megan's Law. Schur argued that had he known he would be subject to lifetime registration, he would not have pled guilty and, therefore, that he did not knowingly and intelligently enter his guilty plea. (See appellant's motion for clarification at ¶¶1-4.)

In an opinion and order entered on September 2, 2009, this court denied Schur's pro se motion to withdraw his guilty plea. A timely appeal to the Superior Court of Pennsylvania was filed on October 2, 2009.[5]

---

5. The notice of appeal is docketed October 9, 2006, the date of receipt in the clerk of court's office. Said notice of appeal, however, shall be deemed filed as of the date it was deposited with prison authorities and/or placed in the prison mailbox, that is, October 2, 2009. See *Commonwealth v. Jones,* 549 Pa. 58, 700 A.2d 423, 426 (1997) (stating language of Pa.R.A.P. 903 is amenable to exception for pro se prisoners, and extending prisoner mailbox rule to all appeals by pro se prisoners; holding "justice requires the appeal to be deemed 'filed' on

On the same day that the notice of appeal was filed from the denial of the motion to withdraw guilty plea, appellant filed a pro se "motion to vacate revocation order." In this motion, appellant raised two issues: (1) whether the court violated appellant's due process rights when it revoked appellant's probation based on inadmissible unreliable polygraph evidence; and (2) whether the court improperly sentenced appellant to a term of total confinement in violation of 42 Pa.C.S. §9771(c). Appellant's request to vacate the April 28, 2005 order revoking his probation was denied by order dated October 13, 2009. Appellant filed a timely notice of appeal to the Superior Court.

By order dated November 4, 2009, appellant was directed to furnish a statement of errors complained of on appeal no later than November 30, 2009. No 1925(b) statement has been received as of this date. In an effort to comply with the Superior Court's directive in Schur's first appeal that the lower court record be sent to the appellate court by December 8, 2009, and to expedite this second appeal, this opinion will be filed addressing the two issues raised by Schur in his pro se "motion to vacate revocation order."

## II. DISCUSSION

Appellant began serving his five-year probation on March 29, 2004. A special condition of his probation was that he attend sex offender counseling with T. W. Ponessa

---

the date that the appellant deposits the appeal with prison authorities and/or places it in the prison mailbox"). See also, *Commonwealth v. Perez*, 799 A.2d 848, 851 (Pa. Super. 2002).

& Associates. According to appellant, he was dismissed from treatment "on the basis of an 'interpretation' of a polygraph examination." (See appellant's motion to vacate revocation order at ¶3.) The polygraph examiner allegedly determined that appellant was "employing 'counter-measures' to frustrate the polygraph." (*Id.* at ¶4.) Appellant claims he was told that the polygraph would be re-administered "in the interest of accuracy" but that another test was never performed. (*Id.* at ¶9.) Instead, appellant was discharged from the sex offender treatment program, arrested for a technical violation of his probation, and subjected to a probation revocation hearing. Initially, appellant claims that it was "improper" for this court to find that he had violated his probation on the basis of a polygraph examination, evidence that appellant argues "would be considered inadmissible in any court in the United States." (See appellant's motion to vacate revocation order at ¶¶5-8, 11.) Appellant concedes that while he was "technically in violation of his probation because he was dismissed from the court-mandated T.W. Ponessa Sex Offender treatment program," it would be "unacceptably short-sighted of this honorable court to ignore the fact that this technical violation was the result of a questionable 'interpretation' of the results of a [polygraph] examination that this honorable court could never use to justify any sentence in any other context." (*Id.* at ¶12.)

It is well-settled that "[d]ue to the unreliable nature of polygraph tests, the results of such tests that raise inferences of guilt or innocence are inadmissible at trial." *Commonwealth v. Watkins,* 750 A.2d 308, 315 (Pa. Super. 2000) (quoting *Commonwealth v. Camm,* 443 Pa. 253,

269, 277 A.2d 325, 333 (1971)). In fact, because of "the well-known unreliability of the tests, our courts uniformly have been 'reluctant to permit any reference to a polygraph examination to be made before the finder of fact.'" *Commonwealth v. Hetzel,* 822 A.2d 747, 767 (Pa. Super. 2003) (quoting *Commonwealth v. Miller,* 497 Pa. 257, 263, 439 A.2d 1167, 1170 (1982)).

Relying upon these general principles of law, appellant contends that his probation revocation was impermissibly grounded upon an impermissible scientific test. (See motion to vacate revocation order at ¶¶5-8.) Appellant's argument, however, fails to recognize the vast difference between an accusatory polygraph and a therapeutic one. "With respect to the former, the polygraph is used as a confrontational tool to extract evidence of uncharged criminality. In the latter, the polygraph is used as a tool to identify risk behaviors and encourage honesty." *Commonwealth v. Camacho-Vasquez,* 81 D.&C.4th 353, 359 (2007). Our Superior Court only recently addressed, for the first time, the propriety of therapeutic polygraphs in sex offender cases in *Commonwealth v. Shrawder,* 940 A.2d 436 (Pa. Super. 2007). In analyzing the issue, the Superior Court cited to a federal decision in *United States v. Johnson,* 446 F.3d 272 (2nd Cir. 2006), *cert. denied, Johnson v. U.S.,* 549 U.S. 953 (2006), which acknowledged that:

"polygraph results are inadmissible as evidence. But that does not much bear on the therapeutic value of the tool: [T]he polygraph test . . . is inadmissible in nearly every circumstance at trial. Obviously, however, evidentiary cases do not govern our evaluation of the use of

polygraphs in connection with the treatment of an offender. *The use of a polygraph test here is not aimed at gathering evidence to inculpate or exculpate [the offender]. Rather, the test is contemplated as a potential treatment tool upon [an offender's] release from prison* . . . ." 940 A.2d at 442 (quoting *Johnson,* 446 F.3d at 278 (citation omitted) (emphasis in original)).

The *Johnson* court further observed that

"[t]he polygraph can help penetrate deception and encourage an offender to confront his own motivations and behaviors. These outcomes further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty. We therefore conclude that polygraph testing can, and in this case does, further sentencing goals without excessive deprivations of liberty." *Id.*

Our Superior Court similarly concluded in *Shrawder* that

"[t]he therapeutic polygraph is an essential tool for a therapist whose job it is to reveal an offender's deception and encourage him or her to confront his or her urges and deviant behavior. The test results further the primary goal of counseling as part of a sexual offender's sentence, which is to rehabilitate the offender and prevent recidivism, with reasonably small incremental deprivations of the offender's liberty. We also note that . . . the candor of appellant or any other probationer is always expected during a probation inquiry, whether or not his responses are being recorded through a polygraph test. We therefore conclude that polygraph testing can, and in this case does, further sentencing goals without exces-

sive deprivations of liberty and hold that a therapeutic polygraph is a proper element in a sex offender treatment program for a convicted sexual offender and does not violate a probationer's rights under the Fifth Amendment to the United States Constitution or under Article One, Section Nine of the Pennsylvania Constitution, so long as the inquiries made pursuant to it relate to the underlying offense for which an offender has been sentenced and do not compel him or her to provide information that could be used against him or her in a subsequent criminal trial." *Id.* at 443. (footnote omitted)

Thus, our appellate court has determined that, while polygraph results are inadmissible as evidence in judicial proceedings, they serve as an essential therapeutic tool in sex offender treatment programs, and requiring a convicted sexual offender to participate in such polygraph testing does not violate a probationer's constitutional rights, so long as inquiries do not compel him to provide information that could be used against him in a subsequent criminal trial. Accordingly, appellant's claim that it was error for the court to rely upon the results of the therapeutic polygraph administered to him in determining whether he is in violation is without merit and must be dismissed.

In the instant case, as part of the negotiated plea agreement and as a condition of his probation and parole, appellant was to attend "any counseling as deemed necessary, to include sex offender counseling." (See plea agreement of March 23, 2001.) Sex offender treatment was, in fact, recommended by the court's probation professionals, a significant component of which required

appellant to admit to his behavior. Because appellant continued to deny the sexual nature of the crimes for which he was convicted, a therapeutic polygraph was ordered by the treatment staff. (N.T., PV hearing at 7-8.) As noted by our sister court in *Camacho-Vasquez, supra:* "A person who admits under oath that he is guilty of a crime may be made to confront the details of that crime in a therapeutic setting and, if necessary, submit to a polygraph as part of the therapeutic process." 81 D.&C.4th at 366. In preparation for the therapeutic polygraph assessment, the staff received police records which included a signed statement by appellant. In the statement, appellant admitted that on three separate occasions his minor daughter had caught him masturbating. During one of those episodes, appellant admitted to instructing his daughter to ingest his ejaculation, which the victim did. Following the third incident, appellant admitted to engaging in additional sexual contact, specifically, cunnilingus and vaginal and anal intercourse. (N.T., P.V. hearing at 8-9.) During his four years in prison and during his first five months of treatment with T.W. Ponessa while on probation, appellant refused to disclose these facts that he admitted to in his signed statement to the police. (*Id.* at 9.)

When appellant was confronted with the information contained in his statement at his therapeutic polygraph assessment, appellant denied that he remembered signing the statement and he denied the factual basis for the crimes to which he pleaded guilty. (N.T., PV hearing at 9.) Appellant was found to be deceptive in that polygraph test. *(Id.)* At follow-up group therapy sessions, appellant was confronted with his statement until he eventually

admitted that these three incidences of masturbation did, in fact, take place with his minor daughter. *(Id.)* Appellant continued, however, to deny the additional charges of oral sex and vaginal and anal intercourse. (*Id.* at 9-10.)

The record establishes that it was because of appellant's steadfast refusal to accept responsibility for his confessed actions that he was discharged from sex offender treatment and not simply because of a failed therapeutic polygraph test. (N.T., PV hearing at 10.) In any event, the questions posed to appellant during his polygraph assessment related only to the underlying offenses for which probation had been imposed, and did not compel him to provide information that could be used against him in a subsequent criminal trial. Thus, the polygraph's sole purpose was to further the primary goal of counseling to rehabilitate the probationer and prevent recidivism, and not for incriminatory purposes. Accordingly, it was proper for the court to admit and rely upon the results of a therapeutic polygraph assessment in determining whether appellant was in violation of his probation.

Next, appellant claims the court improperly sentenced him to a term of total confinement in violation of 42 Pa.C.S. §9771(c). When considering an appeal from a sentence imposed following the revocation of probation, the appellate court's "review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Commonwealth v. Perreault,* 930 A.2d 553, 557 (Pa. Super. 2007) (citation omitted); 42 Pa.C.S.

§9771(b).[6] It is well-settled that the imposition of sentence following revocation of probation is vested within the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. *Id.* at 558 (citing *Commonwealth v. Smith,* 447 Pa. Super. 502, 507, 669 A.2d 1008, 1011 (1996)). It is clearly stated in the Sentencing Code not only that the court may revoke a defendant's probation if appropriate, but also that "upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing." 42 Pa.C.S. §9771(b). See *Commonwealth v. Wallace,* 582 Pa. 234, 241-42, 870 A.2d 838, 842-43 (2005). Likewise, the Superior Court has stated that "upon revocation of probation, a court possesses the same sentencing alternatives that it had at the time of the initial sentencing." *Commonwealth v. Smith,* 447 Pa. Super. 502, 507-508, 669 A.2d 1008, 1011 (1996). This principle applies even if the original sentencing was pursuant to a negotiated plea, as in this case. In *Wallace,* the Supreme Court noted:

"As it is well-established that the sentencing alternatives available to a court at the time of initial sentencing are all of the alternatives statutorily available under the Sentencing Code, these authorities make clear that at any

---

6. Section 9771 of the Sentencing Code provides, in pertinent part:

"(b) Revocation.—The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. §9771(b).

revocation of probation hearing, the court is similarly free to impose any sentence permitted under the Sentencing Code and is not restricted by the bounds of a negotiated plea agreement between a defendant and prosecutor." 870 A.2d at 843. (footnotes omitted)

However, it is also the law of this Commonwealth that once probation has been revoked, a sentence of total confinement may be imposed only if one of the following conditions exist in accordance with section 9771(c) of the Sentencing Code:

"(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. §9771(c).

Appellant contends that "[g]iven the circumstances of the technical violation of probation in this case, and the underlying reason for that technical violation, it appears that *none* of these three justifications applies." (See appellant's motion to vacate revocation order at ¶13. (emphasis in original))

To the contrary, the imposition of a sentence of total confinement after revocation did not violate the requirements of 42 Pa.C.S. §9771(c) in the instant case because Schur's probation failed to achieve its rehabilitative purposes; hence, it was likely that he would commit another crime if he was not imprisoned. Our Supreme Court has explained that "[p]robation is a rehabilitative device to be used to assist the offender in his adjustment to life within society." *Commonwealth v. Cottle,* 493 Pa. 377, 385, 426 A.2d 598, 602 (1981). In deciding the sentence following a probation revocation, "the court

balances the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison." *Commonwealth v. Ballard,* 814 A.2d 1242, 1245 (Pa. Super. 2003) (quoting *Commonwealth v. Del Conte,* 277 Pa. Super. 296, 302, 419 A.2d 780, 783 (1980)). "When it becomes apparent that the probationary order is not serving this desired end (of rehabilitation) the court's discretion to impose a more appropriate sanction should not be fettered." *Id.*

Schur failed to accomplish that which the probation was designed to achieve—rehabilitation of his sexually deviant behavior. Without rehabilitation, appellant remained a danger to the community and society needed to be protected. Thus, having found that parole and probation were ineffective in rehabilitating Schur and that further incarceration was appropriate, the court's sentence of two and one-half to five years incarceration was in accordance with section 9771(c) of the Sentencing Code.

### III. CONCLUSION

For the reasons set forth above, appellant's issues on appeal are meritless and his conviction should be affirmed.

Accordingly, we enter the following:

### ORDER

And now, December 8, 2009, the court hereby submits this opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.