[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-13197

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KARZARTA PIETT,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cr-00033-CDL-MSH-1

————————————

Before ROSENBAUM, ABUDU, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Karzarta Piett appeals his convictions for possession with intent to distribute methamphetamine and possession of a firearm by a convicted felon, challenging the denial of his motion to suppress, challenging his 300-month imprisonment sentence, and challenging his status as an armed career criminal and a career offender. Having read the parties' briefs and reviewed the record, we affirm Piett's convictions and sentence.

## I.

We review the district court's denial of a motion to suppress evidence under a mixed standard, reviewing the district court's factfinding for clear error and the district court's application of the law to the facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012). We grant substantial deference to both the explicit and implicit credibility determinations of the district court acting as factfinder, construing all facts in the light most favorable to the prevailing party below. *Id.* at 1303. We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Under the

exclusionary rule, evidence cannot be used against a defendant in a criminal trial where that evidence was obtained via an encounter with police that violated the Fourth Amendment. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). "A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (*en banc*).

On appeal, Piett argues that the district court erred in denying his motion to suppress evidence because the officer who stopped him unlawfully extended the traffic stop, and the officer lacked reasonable suspicion and probable cause to search his vehicle. Specifically, Piett claims that the traffic stop continued for an additional one minute and 26 seconds after the officer's questioning Piett before the narcotics dog and handler arrived at the scene. In response, the government contends that at the time the narcotics dog alerted to the driver's door for the presence of drugs, the traffic stop's mission—issuing Piett a citation for driving with a suspended license and waiting for a lawfully licensed driver to retrieve the car—was not completed. The government reasons that because the dog sniff did not prolong the traffic stop, the officers did not have to establish reasonable suspicion prior to pursuing matters unrelated to the mission of the traffic stop.

Once an officer makes a traffic stop, he does not have unfettered authority to detain a person indefinitely, and instead, the detention is limited in scope and duration. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). Officers must conduct their investigation diligently and cannot prolong a stop absent

reasonable suspicion of other illegal activity. *Rodriguez v. United States*, 575 U.S. 348, 354-55, 135 S. Ct. 1609, 1614-15 (2015). An officer unlawfully prolongs a stop when he "(1) conduct[s] an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Campbell*, 26 F.4th at 884. The acceptable length of the stop is "determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614 (citation and quotation marks omitted). Thus, authority for the seizure ends when tasks tied to the traffic mission "are—or reasonably should have been—completed." *Id.*

"[A]n officer's mission includes ordinary inquiries incident to the traffic stop," such as checking the driver's license, searching for outstanding warrants against the driver, and inspecting the vehicle's registration and proof of insurance. *Id.* at 355, 135 S. Ct. at 1615 (quotation marks and brackets omitted). These inquiries ensure "that vehicles on the road are operated safely and responsibly." *Id.* Further, the mission includes detaining drivers without valid licenses to prevent them from driving away. *United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017). In Georgia, "any person who drives a motor vehicle on any public highway . . . without being licensed . . . or at a time when his or her privilege to so drive is suspended, disqualified, or revoked shall be guilty of a misdemeanor for a first conviction." O.C.G.A. § 40-5-121(a) (2016).

The Fourth Amendment tolerates certain tasks unrelated to the traffic stop's mission, such as an officer's inquiry, which is

permitted if they do not add time to the stop. *Rodriguez*, 575 U.S. at 354-56, 135 S. Ct. at 1614-15. An officer can prolong a stop before or after completing their investigation. *Campbell*, 26 F.4th at 884. Any delay unrelated to the stop's mission—even 30 seconds—unlawfully prolongs the stop. *Id.* An officer's inquiry into matters unrelated to the justification for the traffic stop does not prolong a stop if the inquiry occurs while officers are still addressing the traffic stop's mission. *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615. *See e.g., Vargas*, 848 F.3d at 973-75 (affirming the district court's denial of a motion to suppress after analyzing the traffic stop under *Rodriguez* and holding that when state law forbids a detained driver from driving his car away from the scene of the traffic stop, the period of detention until a licensed driver arrives to retrieve the car "is lawful enforcement of the law, not unlawful detention.").

A police officer has probable cause to conduct a search of a vehicle "when the facts available to [him] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243, 133 S. Ct. 1050, 1055 (2013) (alterations in original) (quotation marks omitted). "[P]robable cause arises when a drug-trained canine alerts to drugs." *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993).

The record demonstrates that the district court did not err in denying Piett's motion to suppress. The officer did not unlawfully prolong the traffic stop by inquiring about unrelated matters as the traffic stop's mission was ongoing and the inquiry did not add any time to the traffic stop. Furthermore, the officer had

probable cause to search Piett's vehicle after a narcotics dog positively alerted to the presence of contraband at the driver's door of his vehicle.  Accordingly, we affirm on this issue.

## II.

We review whether a prior state conviction qualifies as a "controlled substance offense" under the Sentencing Guidelines *de novo*.  *United States v. Bates*, 960 F.3d 1278, 1293 (11th Cir. 2020).  When a defendant does not state the grounds for an objection in the district court, we review for plain error.  *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003).  To establish plain error, a defendant must show: (1) an error, (2) that was obvious, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the proceedings.  *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014).  For an error to be obvious under plain error review, "it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule."  *Id.* (quotation marks omitted).

Pursuant to the Sentencing Guidelines,

A defendant is a career offender if (1) the defendant was at least [18] years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least [2] prior felony convictions of either a crime of violence or a controlled substance offense.

23-13197                Opinion of the Court                7

U.S.S.G. § 4B1.1(a).

A controlled substance offense is:

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b).

Piett contends on appeal that the district court erred in finding his Georgia marijuana conviction a qualifying controlled substance offense under U.S.S.G. §4B1.1(a) because Georgia's definition of marijuana in 2003 was broader than the definition of marijuana under the Federal Controlled Substances Act in 2003. Piett also claims that his 2003 marijuana conviction does not qualify as a controlled substance offense within the meaning of U.S.S.G. §4B1.2(b)(1) because both the federal and Georgia definition of marijuana has changed since 2003 to exclude hemp and hemp products. The government argues that the district court did not err and relies on our decision in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), *cert. granted, judgment vacated and reinstated*, 139 F.4th 887 (11th Cir. 2025)

We conclude that Piett's argument is foreclosed by our decision in *Dubois*. There we reaffirmed our prior holding that a

controlled substance under §4B1.2(b)'s definition of "controlled substance offense" is, for prior state offenses, a drug regulated by state law at the time of the conviction. *Dubois*, 94 F. 4th at 1296. At the time of Piett's 2003 conviction, Georgia law regulated marijuana by criminalizing possession with the intent to distribute, thus, marijuana qualifies as a controlled substance for the purposes of §4B1.2(b).

At the time of Piett's 2003 marijuana-related conviction, it was unlawful under Georgia law for any person to possess, control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with the intent to distribute marijuana. O.C.G.A. §16-13-30(j)(1) (2003). As we held in *Dubois*, the district court did not err by applying the career-offender enhancement to Dubois's sentence based on Georgia marijuana convictions as predicate controlled substance offenses because Georgia law regulated marijuana—including hemp—at the time of Dubois's 2013 conviction. For prior state drug convictions, controlled substance offenses are defined by reference to the relevant state drug schedules at the time of the previous conviction, "even if federal law does not regulate that drug." *Dubois*, 94 F.3d at 1296-1300. The same reasoning applies to Piett's 2003 marijuana-related conviction and *Dubois* controls. Thus, we affirm as to this issue.

## III.

We review *de novo* whether a prior conviction is a "serious drug offense" under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). *United States v. Smith*, 983 F.3d 1213, 1222-23

(11th Cir. 2020).  When a defendant does not state the grounds for an objection in the district court, we review for plain error.  *Zinn*, 321 F.3d at 1087.

Piett argues that his 1999 and 2003 Georgia marijuana convictions do not qualify as serious drug offenses under the ACCA because, at the time of his federal sentencing, his state convictions were no longer a categorical match to the federal definition, which now excludes hemp.  The government responds that Piett's argument is foreclosed by our decision in *United States v. Jackson*, 55 F. 4th 846 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101, 144 S. Ct. 1195 (2024).

The ACCA requires that any person who violates 18 U.S.C. § 922(g) serve a mandatory minimum sentence of 15 years when the defendant has 3 prior convictions for a "violent felony" or a "serious drug offense" committed on occasions different from one another.  18 U.S.C. § 924(e)(1).  The ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."  *Id.* § 924(e)(2)(A)(ii).

We apply the categorical approach to determine whether a defendant's state conviction is a serious drug offense under the ACCA.  *Jackson*, 55 F.4th at 850.  Under the categorical approach, we consider the statutory definition of the state offense rather than the facts of the crime itself.  *Id.*  "Under this approach, a state

conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than ACCA's definition of a 'serious drug offense.'" *Id.* In *Jackson*, we read the "ACCA's definition of a 'serious drug offense' under state law to incorporate the version of the federal controlled-substances schedules in effect when [the defendant] was convicted of his prior state drug offenses." *Id.* at 855. During the pendency of this appeal, the Supreme Court affirmed *Jackson*'s reading of the ACCA, holding that "a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense." *Brown*, 602 U.S. at 123, 144 S. Ct. at 1210.

At the time of Piett's 1999 and 2003 marijuana-related conviction, the federal Controlled Substance Act regulated marijuana, which was defined as:

> [A]ll parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (1999); *see also id.* (2003).  Georgia's definition of marijuana at the time was the same.  *See* O.C.G.A. § 16-13-21 (1999); *see also id.* (2003).

The record demonstrates that the district court did not plainly err by finding that Piett's previous Georgia marijuana convictions qualified as predicate serious drug offenses under the ACCA.  Piett's argument is foreclosed by precedent.  Accordingly, we affirm on this issue.

## IV.

Piett's final argument is that the district court violated his Sixth Amendment rights when it used undisputed information about his prior convictions in his PSI to sentence him under the ACCA, rather than a jury determination beyond a reasonable doubt that the prior convictions were committed on different occasions (*Erlinger* error).  The government contends that because Piett did not raise this challenge during the district court proceedings, he must demonstrate that the district court plainly erred.  The government claims that Piett cannot meet the third prong of the plain error test because his substantial rights were not affected when the district court, rather than the jury, found that his qualifying convictions resulted from crimes committed on different occasions.

The government is correct, and we review this challenge for plain error.  *See United States v. Edwards*, ___ F. 4th ___, 2025 WL 1778784 (No. 22-13963) (11th Cir. June 27, 2025).  In conducting

this review, we consider "the whole record to determine the effect of any error on the defendant's substantial rights, including proceedings that both precede and post-date the errors about which the defendant complains." *Edwards*, at ___, 2025 WL 1778784 *8 (internal quotation marks and alterations omitted). The government concedes that Piett has shown that an *Erlinger* error occurred, and that error was plain. *See Rosales-Mireles v. United States*, 585 U.S. 129, 134-35, 138 S. Ct. 1897, 1904-05 (2018) (setting out requirements to show plain error). Thus, the question is whether Piett can demonstrate prejudice; whether the error affected his substantial rights, which means in the context of sentencing, whether "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 140, 138 S. Ct. at 1908. In other words, the court asks whether the sentence would be different but for the erroneous sentencing enhancement. *United States v. Steiger*, 99 F.4th 1316, 1326 (11th Cir. 2024) (*en banc*). The onus of establishing prejudice rests with Piett, and that burden is "heavy." *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018).

For the sentencing enhancement to apply, the ACCA predicate offenses must have been "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In *Erlinger*, the Supreme Court held that judicial factfinding by a preponderance of evidence that a defendant has three ACCA predicate convictions committed on different occasions violates the Fifth Amendment's guarantee of due process of law and the Sixth Amendment's guarantee to a jury trial. *Erlinger v. United States*, 602 U.S. 821, 833-35, 144 S. C. 1840,

1850-52 (2024). The Court held that this finding must be made by a jury beyond a reasonable doubt or freely admitted by the defendant in a guilty plea. *See id.* In explaining its reasoning, the Court emphasized that the ACCA's different-occasions inquiry can be "intensely factual" as to whether the "past offenses differed enough in time, location, character, and purpose to have transpired on different occasions." *Id.* at 828, 838-40, 144 S. Ct. at 1847-48, 1853-55. The Court explained that "no particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones." *Id.* at 841, 144 S. Ct. at 1855. The Court noted that "in many cases the occasions inquiry will be 'straightforward,'" such as when "a defendant's past offenses [are] different enough and separated by enough time and space," though the Court stressed that this finding must still be made by a jury rather than a judge. *Id.* at 842, 144 S. Ct. at 1856.

Here, the district court enhanced Piett's sentence based on four prior convictions: (1) 2003 Georgia conviction for possession of marijuana with intent to distribute; (2) 2005 Georgia conviction for burglary, kidnapping, aggravated assault, robbery, and terroristic threats; (3) 1999 Georgia conviction for possession of marijuana with intent to distribute; and (4) 2000 conviction for felonious aggravated assault and criminal trespass. The PSI provided facts for each offense. Piett never articulated to the district court that he was specifically challenging anything about his prior convictions, nor objected at sentencing to the prior convictions as support for the offense level applicable for an armed career criminal under the ACCA.

It is clear our review is for plain error.  Based on the record, we conclude that Piett has failed to meet his burden of demonstrating that the error affected his substantial rights because the record shows that his past convictions were temporally remote from each other.  *See Erlinger*, 602 U.S. at 828, 144 S. Ct. at 1847-48 (setting forth considerations such as whether the past offenses were committed close in time; whether the past offenses were committed near or far from one another, and whether the past offenses were similar or intertwined in purpose and character).  A jury could not conclude otherwise because none of the offenses were committed close in time, and only two offenses were similar in that they both were drug offenses.  Further, on appeal Piett does not speculate how these offenses were committed on the same occasions, and he does not explain how there could be a reasonable probability of a different outcome.  Thus, we conclude that Piett has not met his plain-error burden to show that the *Erlinger* error affected his substantial rights, and we affirm the district court's application of the ACCA enhancement.

Accordingly, based on the aforementioned reasons, we affirm Piett's convictions and sentence.

**AFFIRMED**.